STATE OF MISSOURI at the Relation and to the Use of WILLIAM R. GENTRY and JOHN L. GILMORE v. HONORABLE WILLIAM DEE BECKER, LOUIS NOLTE and MICHAEL J. HART, as Members of the Board of Estimate and Apportionment of the City of St. Louis, Missouri, and MICHAEL J. HART, President of the Board of Aldermen of the City of St. Louis, Missouri, LOUIS A. KENKEL, JAMES P. BRODERICK, LOUIS· COMERFORD, JOHN J. O'CONNOR, HERMAN NOVACK, JOSEPH B. SCHWEPPE, EDWARD J. COURTIAL, BERNARD J. FITZSIMMONS, RICHARD NICHOLS, DENIS T. BAHLINGER, EDGAR S. NICOLAI, LAWRENCE P. WALSH, CHARLES E. ALBANESE, WALTER H. TOBERMAN, LOUIS A. LANGE, CHARLES B. O'CONNOR, THOMAS C. TURNER, AUGUST MEIER, ORVILLE A. ARMSTRONG, WALTER W. ZIEGENBALG, GUS A. HARTKOPF, EDGAR J. FEELY, EDWARD LEE DUKE, LOUIS G. BERRA, CLAUDE I. BAKEWELL, LEROY E. COUPLIN, CHARLES G. KRATOVIL, WILLIAM J. WARNICK, as Members of the Board of Aldermen of the City of St. Louis, Missouri, Appellants. —No. 38447.—174 S. W. (2d) 181.

Division Two, July 6, 1943.

Rehearing Denied, September 7, 1943.

Motion to Transfer to Banc Overruled, October 4, 1943.

*Joseph F. Holland,* City Counselor, *H. A. Hamilton* and *Albert Miller* for appellants.

*Fordyce, White, Mayne, Williams & Hartman, Walter R. Mayne* and *G. Carroll Stribling* for respondents William R. Gentry and John L. Gilmore.

 BARRETT, C.—This proceeding in mandamus presents the question of whether a circuit court, having appointed counsel to represent it in a contempt proceeding, possesses also the inherent power to allow such attorneys a fee for their services and order the fee paid by a county—in this instance the City of St. Louis.

On March 9, 1940 the Circuit Court of the City of St. Louis issued an information and citation in contempt in the name of the State at the relation of the Circuit Attorney against the Pulitzer Publishing Company, Ben H. Reese, Ralph Coghlan and Daniel R. Fitzpatrick, based upon the printing and publishing of certain editorials and cartoons in the "St. Louis Post-Dispatch." It was charged that the publications tended to interfere with the due administration of justice in the case of State of Missouri v. John P. Nick and Clyde A. Weston, then pending before the court, and, furthermore, that the articles and cartoons scandalized and degraded the court. (All the cases were consolidated and finally disposed of in State ex rel. Pulitzer Pub. Co. v. Coleman, 347 Mo. 1238, 152 S. W. (2d) 640, where the facts upon which the contempt proceedings were based are fully set forth.) On March 13, 1940, the court appointed the relators, Messrs. William R. Gentry and John L. Gilmore, members of the Missouri bar, practicing in St. Louis, "as special counsel for the State of Missouri, to present to the Court said information and citation and to represent the State of Missouri in said matter." From that date until the final disposition of the cases in this court Mr. Gentry and Mr. Gilmore did so serve.

After the termination of the contempt proceedings the attorneys filed a petition in the Circuit Court asking that they be allowed attorneys' fees for their services. The "Circuit Court, sitting in general term, duly considered said petition and . . . the report of the committee theretofore appointed by the judges . . . and thereupon it was ordered by the said judges sitting in general term . . . that said William R. Gentry and John L. Gilmore be allowed a joint sum of $12,000.00 . . . said sum to be paid out of the treasury of the City of St. Louis."

The attorneys presented a certified copy of the court's order and demanded that the appropriate officials of St. Louis pay the fee, but they refused and this proceeding followed. The Circuit Court issued a peremptory writ of mandamus and the city appeals.

The relators do not rely upon a contract, either express or implied, with the city, the state or the court to sustain the allowance of the fee. Neither do they claim that there is a statute expressly or impliedly authorizing the court to make the allowance either as costs, penalty or compensation. Our interpretation of their position is that the court had the inherent power to punish for contempt and as a corollary, in the protection of its functions as a court, it also had the inherent power to appoint counsel and the existence and exercise of that power necessarily included the further inherent and incidental power to allow such counsel a reasonable fee for their services. They say that since the fee was allowable by the circuit court it is payable out of the city or county treasury without other or further proceedings and that, therefore, mandamus will lie to compel its payment. Mo. R. S. A., Sec. 2102; Perkins v. Burks, 336 Mo. 248, 78 S. W. (2d) 845. Compare State ex rel. v. Wehmeyer (Mo. App.), 113 S. W. (2d) 1031.

There is no analogy of principle, either for or against the allowance, in the instances of counsel fees being assessed as costs or an expense chargeable to one of the parties in a civil contempt or in the instances of fines which include a fee as a part of the punishment in a criminal contempt. In those cases the fee is assessed against one of the parties either as punishment or an expense and costs incurred and accruing at the instigation of one of the parties. Annotation Ann. Cas. 1913B, p. 565; 17 C. J. S., Sec. 96, p. 138; 12 Am. Jur., Secs. 77, 79, pp. 443, 445. Neither is there an applicable analogy in the attempts to assess the costs of a contempt proceeding prosecuted at the relation of a private party against the state or county under a criminal cost statute. Rapalje, [183] Contempt, Sec. 132; Pelletier v. Glacier County, 107 Mont. 221, 82 Pac. (2d) 595; State ex rel. Hubble v. Hubble, 128 Ore. 667, 275 Pac. 679; 17 C. J. S., Sec. 127, pp. 173-174. As we have said, there is no statute authorizing either the employment of counsel or the allowance of the fees and hence the question of whether the charge is within or without the

provisions of a statute is not involved. Thatcher v. St. Louis, 343 Mo. 597, 122 S. W. (2d) 915; State v. Weatherby, 344 Mo. 848, 129 S. W. (2d) 887. Nor do we think the instances of allowances to amicus curiae (In re St. Louis Institute of Christian Science, 27 Mo. App. 633), to guardians ad litem for minors (Jones v. Yore, 142 Mo. 38, 43 S. W. 384) or to special commissioners to take· depositions (Watkins v. McDonald, 70 Mo. App. 357; Paxson v. MacDonald, 97 Mo. App. 165, 70 S. W. 1101) in point as the allowances in all those cases are from funds then under the court's control and in cases between private parties then before the court and all such charges are assessed as costs. Compare these allowances to instances in which it was attempted to charge counsel fees as statutory costs or damages and it was held that there was no authorization for the allowances. Leslie v. Carter, 268 Mo. 420, 187 S. W. 1196; Pickel v. Pickel, 243 Mo. 641, 147 S. W. 1059; Albers v. The Merchants' Exchange of St. Louis, 138 Mo. 140, 39 S. W. 473; The City of St. Louis v. Meintz, 107 Mo. 611, 18 S. W. 30.

The question presented by this case is novel as to both· fact and principle. As a determinative analogy the relators rely upon those instances in which the "inherent powers" of courts have been recognized and enforced—that is, those powers necessarily inherent in the court "to do all things that are reasonably necessary for the administration of justice" and in order that it may preserve its existence and function as a court and which powers exist and inhere merely because it is a court and irrespective of legislative or constitutional grant. 14 Am. Jur., Sec. 171, pp. 370-372; annotation Ann. Cas. 1914A, p. 100. For example, no place or facilities for holding court being provided, the court has the inherent power to provide · the necessary place and equipment in order that the court may transact its business. Annotation 22 L. R. A. 398. A court cannot properly function without certain attaches and attendants, such as clerks, bailiffs, reporters and janitors and none or insufficient one's being furnished the court may, as long as the necessity exists, appoint such attaches and attendants as are necessary to enable the court to properly function as a court. 14 Am. Jur., Sec. 22, pp. 261-262. See also the list and examples of courts exercising their inherent powers cited in In re Surcharge of County Commissioners, 12 Pa. Dist. & Co. Rpts. 471.

In State ex rel. Hensick v. Smith, 5 Mo. App. 427, the circuit court, sitting in a criminal case which required that the jurors be kept together during the progress of the trial, directed the marshal of the court to receive bids for furnishing meals to the jurors. Bids were received and the court ordered the marshal to contract with one of the bidders and to present the bills to the court for examination and allowance. The court said, l. c. 429: "The feeding of the jurors is, therefore, a necessary expense, without incurring which the business

of the court could not be carried on, and the administration of criminal justice must come to an end.'' Since the feeding of the jurors and its consequent expense was necessary for the court to carry on its business the court had the power to incur the expense and having done so and having determined the reasonableness of the charge mandamus would issue to compel its payment. State ex rel. McNeil v. St. Louis County Court, 42 Mo. 496. In this regard the rule may be generalized as follows: ''The courts have the inherent power and authority to incur and order paid all such expenses as are (reasonably) necessary for the holding of court and the administration of the duties of courts of justice.'' Schmelzel v. Board of County Commrs., 16 Idaho, 32, 35, 100 Pac. 106, 107. The limitation on the courts' inherent power is that the expense incurred or the thing done must be reasonably necessary to preserve the courts' existence and protect it in the orderly administration of its business. Annotation 1914A, p. 100. In the Schmelzel case barbers were provided for the jurors who sat in the famous Haywood and Pettibone cases and the bill for shaving the jurors and cutting their hair was held not to be ''a necessary expense in order to administer justice in the court in which it was incurred.''

■ The most important and essential of the inherent powers of a court is the authority to protect itself against those who [184] disregard its dignity and authority or disobey its orders by punishing for contempt. 14 Am. Jur., Sec. 171, pp. 370, 372; 17 C. J. S., Sec. 2, pp. 4-5. That power is not only inherent in our courts of general jurisdiction but it is also expressly conferred by statute. Mo. R. S. A., Secs. 2028-2033; Hernreich v. Quinn, 350 Mo. 770, 168 S. W. (2d) 1054; State ex rel. Pulitzer Pub. Co. v. Coleman, supra; annotations 8 A. L. R. 1543; 54 A. L. R. 318 and 121 A. L. R. 215.

■ Assuming, for the sake of this case, that the court had as an incident to its inherent power to punish for contempt the further power to appoint the relators as counsel to represent it or the state (but see Durant v Supervisors of Washington County, Woolworth, p. 377, Fed. Cas. No. 4, 191 as to the duty of the state's or government's counsel in such proceedings), it does not necessarily follow that the relators would be entitled to a fee for their excellent and valuable services. If it were not for one further circumstance the relators' analogy of the court's inherent power might be determinative of this case. That circumstance is that the relators are attorneys, members of the bar of this state, and officers of the court appointing them. 5 Am. Jur., Sec. 6, pp. 264-265; 1 Thornton, Attorneys at Law, Sec. 13, pp. 14-16.

Another inherent power possessed by courts is that of providing counsel for the indigent. Knox County Council v. State, 217 Ind. 493, 29 N. E. (2d) 405, 130 A. L. R. 1427. And when the court assigns or requests counsel to represent an indigent, at least one charged with a crime, it is not only the duty of the attorney to accept the

assignment and act but he is also not at liberty to decline the appointment except under certain circumstances. 7 C. J. S., Sec. 54, p. 837; 2 Cooley, Constitutional Limitations, p. 700. It is the general rule and the better reasoned view that "in the absence of statute providing therefor, an attorney who has been assigned by the court to defend an indigent accused cannot recover compensation therefor from the public," (Annotations 130 A. L. R. 1439, 1440; 36 L. R. A. (N. S.) 377-383) either for trying the case or for appealing it. Annotation 100 A. L. R. 321, 331.

In Kelley et al. v. Andrew County, 43 Mo. 338, a lawyer assigned to represent an indigent accused claimed a fee from the county for his services—basing his right on an implied contract. The court held that he was not entitled to compensation for his services and based its opinion on the ground that the state and not the county was prosecuting, defending or supporting the prisoner and the county, therefore, was under no legal obligation to the prisoner or the lawyer. A better reason for not allowing counsel compensation in such cases is that "when a lawyer takes his license he takes it burdened with certain honorary obligations. He is a sworn minister of justice, and when commanded by the court he cannot withhold his services in cases prosecuted in forma pauperis." 1 Thornton, Attorneys at Law, Sec. 86, pp. 143-144. Or, as the matter was put in Arkansas County v. Freeman & Johnson, 31 Ark. 266, 267, "Attorneys are a privileged class; they only are permitted to practice in the courts; and they are officers of the court. The law confers on them rights and privileges, and with them imposes duties and obligations to be reciprocally enjoyed and performed. . . . The appellees but performed a duty, which their relation to the court and the public required of them." Or as it was stated by the Court of Claims in Nabb v. U. S., 1 Ct. Cl. 173, 174: "The petitioners were, as they state, attorneys of the circuit court, and, as such, subject to its jurisdiction in all its official action; and the inference from that relation and the general practice is that they were, as such attorneys, appointed by the court to perform a duty pertaining to them as such officers, and that their action was official . . ."

It is our opinion that the same reasoning should apply to this case. There may be no question but that the relators justly deserve to be compensated for their valuable services but they are officers of the court appointing them and if the court's dignity and authority has been assaulted they were bound to accept the appointment, the honor and the challenge of defending the court and that without pay, especially so if there are no state officials charged with the duty or willing to undertake it. The court has the inherent power to punish for contempt and if it has also the inherent power to appoint or request a lawyer, as an officer of the court, to represent it or the state in the prosecution of the contempt proceeding that is all the power

the court reasonably needs for its own protection and for the due administration of justice. The court could and did adequately [185] protect itself by exercising its inherent power of punishing for contempt and appointing counsel and it was not necessary for the court to further exercise its inherent powers by allowing the fee in question.

The judgment of the trial court issuing the peremptory writ of mandamus, therefore, is reversed. *Westhues, C.,* concurs; *Bohling, C.,* concurs in result.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.