In re the ESTATE OF David DOTHAGE.

David DOTHAGE, Respondent,

v.

Waldo C. DOTHAGE, Guardian Appellant.

No. WD 38415.

Missouri Court of Appeals, Western District.

April 14, 1987.

Thomas J. Downey, Jefferson City, for appellant.

William L. Orr, Columbia, for respondent.

Before CLARK, C.J., and KENNEDY, and NUGENT, JJ.

CLARK, Chief Judge.

This is an appeal from various orders entered in the case of David Dothage, a blind, mentally retarded incompetent. Appellant, Waldo C. Dothage, is the duly appointed and acting guardian of the person of the incompetent and is his father. The orders in question directed the transfer of the incompetent from one residential care facility to another, taxed attorney fees and costs against appellant personally and cited appellant for contempt when the fees and costs were not paid. The judgment and orders are reversed.

David Dothage, who was born June 22, 1954, is hemiplegic on the right side, is visually impaired and mentally retarded. He normally uses a wheelchair but can walk slowly with use of a cane. He was cared for at home by his parents until 1971 when he was admitted to the Higginsville Habilitation Center. He has remained at that institution ever since, living in a dormitory. The staff there provides therapy and vocational training in addition to personal care.

Appellant was appointed guardian for David by the Probate Court of Boone County on April 16, 1976. At the time, David was found to be indigent. David's care at Higginsville has been provided for at state expense. The parents, appellant and the mother, Mary Dothage, have maintained a continuing interest in their son and his welfare and visit with him at Higginsville at least once a month. The guardianship proceeding was instituted for the purpose of handling affairs for David when he reached the age of majority. Placement of David at the Higginsville mental retardation facility was approved pursuant to

§ 202.187(3), RSMo.1978 (Repealed, Laws 1980, H.B. 1724).

On December 18, 1985, the court issued an order, sua sponte, setting a hearing, the announced purpose of which was to determine if David was in the least restrictive environment and, if not, to determine where he should be placed. The court also ordered the appointment of a guardian ad litem to represent David at the hearing. On February 18, 1986, evidence was taken from Richard Payne, a psychiatric social worker at Higginsville; Charles Brewer, director of Woodhaven Learning Center, a private institution in Columbia; Mr. and Mrs. Dothage; and David.

The substance of the testimony was that the Higginsville institution was not particularly oriented to specific programs for the blind, although it was structurally adapted to care for the orthopedic patient. Woodhaven, by contrast, offers special training for the blind but the buildings have stairs and patients must be able to evacuate for emergency drills. A person entirely dependent on a wheelchair could not be accepted. The concern by Mr. and Mrs. Dothage regarding placement of David at Woodhaven was for his physical safety, particularly because of his inability to move up or down stairs normally.

At the conclusion of the hearing, the court ordered the Higginsville Habilitation Center to make arrangements for filing an application to admit David to the Woodhaven Center "as soon as possible." A fee of $150.00 and $49.00 in expenses were allowed to the guardian ad litem and that sum, together with court costs, were assessed against appellant personally. When appellant did not pay the cost bill, the court entered an order directing appellant to show cause why he should not be held in contempt of court for failure to satisfy the judgment. After a post-hearing motion for rehearing was denied, this appeal was taken.

We first consider appellant's contention that the trial court exceeded its jurisdiction in use of the contempt power as a means to collect the judgment for costs.

▪ Constitutional courts of common law jurisdiction possess an inherent power to punish for contempt of their authority, but only if the judicial function is integrally threatened. *McMilian v. Rennau*, 619 S.W.2d 848, 850 (Mo.App.1981). The power to punish for contempt should be used sparingly, wisely, temperately and with judicial self-restraint. The power should be exercised only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice. *Fulton v. Fulton*, 528 S.W.2d 146, 157 (Mo.App.1975).

▪ Section 511.340, RSMo.1986, grants the courts power to punish by contempt for the failure of a party to perform an act required by a judgment, but only if the performance be of an act other than the payment of money. The punishment as for contempt of a judgment debtor for his refusal to obey a judgment has no application to judgment for the mere payment of money. *State ex rel. City of Pacific v. Buford*, 534 S.W.2d 819, 821 (Mo.App. 1976). Imprisonment for debt would violate the federal and state constitutions. *White v. Hutton*, 240 S.W.2d 193, 200 (Mo. App.1951).[1]

▪ The statutory vehicle for collecting costs is by execution. Section 514.300, RSMo.1986. There is neither inherent nor statutory authority to cite a party indebted for costs in a contempt proceeding. In this case, the show cause order directed to appellant was improvidently entered and the order is quashed.

1. Certain exceptions to this rule, none of which are applicable here, have been approved by the Missouri Supreme Court. Maintenance and child support payments have a special status and may be enforced by contempt. *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567, 575 (Mo. banc 1976). So, too, the appellate court has held that payment of money as part of a property settlement in a dissolution contest may be a subject for contempt proceedings. *Yeager v. Yeager*, 622 S.W.2d 339, 343 (Mo.App.1981).

In a related point, appellant contends the court was without authority to assess costs against him as guardian or personally. The judgment as to costs is unclear in that the entry reads: "Costs taxed against Guardian personally." It is assumed the intent was to charge appellant in his representative capacity as guardian, there being no indication that appellant was a party to the proceedings either as an individual or as the natural parent of David. As a component of his challenge to the cost bill, appellant also asserts that the court lacked authority to appoint a guardian ad litem in a proceeding, as here, initiated sua sponte by the court to determine an issue relative to placement of the incompetent.

■ At the time proceedings were had before the trial court in this case, the statute in effect providing for appointment of a guardian ad litem for an incapacitated or disabled person was § 475.097, RSMo.Cum. Supp.1984. Such an appointment is conditional upon a finding by the court that the natural or appointed guardian is not effectively performing his duties and upon a further finding that the welfare of the ward requires immediate action. In addition, a guardian ad litem may be appointed to adjudicate the rights of the parties where it appears there is a possible conflict of interest between guardian and ward.

The court here made no finding necessarily prerequisite to appointment of a guardian ad litem, nor was there any evidentiary ground in this record prior to the order of appointment which would establish a basis to conclude that appellant was not effectively performing his duties or that David's welfare required immediate action. The hearing on February 18, 1986, therefore presented the anomalous setting of one guardian arrayed against the other.

■ The power to appoint guardians is purely statutory. It must be exercised in the manner prescribed and in accordance with the statutes. The court may not on its own motion and without following the procedure required by statute appoint a guardian. *In re Dugan*, 309 S.W.2d 145, 148 (Mo.App.1957). The order entered by the court sua sponte in this case appointing William L. Orr guardian ad litem was void for want of jurisdiction. It therefore follows, of necessity, that the order allowing fees and costs for services of the guardian ad litem was also void.

■ The fee and expenses of the guardian ad litem accounted for the major portion of the cost bill taxed against appellant. In addition, however, the costs included fees to the sheriffs of Boone and Lafayette Counties. Appellant contends he is not to be held personally responsible for any of the cost charges. Appellant's contention must be sustained. No item is taxable as costs unless specifically so provided by statute. *In Interest of Ray*, 602 S.W.2d 955, 958 (Mo.App.1980). The only statute conceivably applicable here was § 475.085, RSMo.Cum.Supp.1984, which provided that the costs of proceedings as to incapacity or disability of any person are to be paid from his estate, or by the county, or by the person filing a petition for guardianship if the person charged to be incapacitated or disabled is not found incompetent. There is no authority to tax costs personally against the guardian of an incompetent and the trial court plainly erred in attempting to impose this obligation on appellant.

Appellant next asserts that the trial court lacked subject matter jurisdiction over the question of the ward's placement, first because authority to arrange for delivery of services to the mentally retarded is by statute initially invested in the Department of Mental Health and, second because it is within the discretionary authority of a duly appointed guardian of an incompetent to provide for the care, treatment and habilitation of the ward, absent a finding that the guardian has exceeded the discretionary authority given him by virtue of his appointment. Both contentions are meritorious.

Under Chapter 633, RSMo.1986,[2] the legislature established a comprehensive plan for the development and delivery of services to persons affected by mental retardation or developmental disabilities. An important component of the plan is the creation, under supervision of the division of mental retardation, of regional centers which are the entry and exit points for clients. Section 633.105. A person registered as a client of a regional center receives the services of the center, including referral to appropriate services and placement, subject to authorization by parent or legal guardian or by court order pursuant to Chapter 475, RSMo.1986. Section 633.110.

Clients who have been placed in mental retardation facilities are to be evaluated periodically by the head of the institution and such evaluations include a determination of need for continued residential habilitation, placement in another facility or discharge. Section 633.130. The placement or discharge of a client is cooperatively determined by the head of the facility and the client's parent or legal guardian, but if disagreement arises, the issue is administratively determined by a review panel appointed by the chairman of the state advisory council. Sections 633.135.1 and 633.135.2. The recommendation by the panel is forwarded to the division director who enters a final decision and notifies the parties. A client, parent or guardian who disagrees with the decision is afforded a right of judicial review under the provisions of Chapter 536, RSMo.1986 by petition to the circuit court in the county where the client, parent or guardian resides. Section 633.135.4.

■ It is a matter of fundamental, procedural law that the legislature has the power to declare who shall promulgate and enforce the legislature's public policy and, when an agency of government is created for that purpose, no other body, judicial, executive or municipal may step in to actively enforce the policy or do other acts in relation thereto. *State ex rel. Cirese v. Ridge,* 138 S.W.2d 1012, 1014 (Mo. banc 1940). This is known as the doctrine of primary jurisdiction which calls upon courts to defer to an administrative agency and give the agency first right to act on a matter. *Main Line Hauling Co. v. Public Service Commission,* 577 S.W.2d 50, 51 (Mo.App.1978). This is not to say the courts are without review jurisdiction, but that jurisdiction is exercised through the channel ordained by the legislature, *State ex rel. Cirese, supra* at 1014.

The legal file in this case contains correspondence from the Department of Mental Health dating back to 1984 indicating that David Dothage is a registered client of the Central Missouri Regional Center, Division of Mental Retardation. The file contains evaluation reports prepared under § 633.130. The last report prior to the hearing ordered by Judge Roper suggests that David was not in his least restrictive environment but that no other placement was then available or was expected to be available before 1988. The report also stated that David was receiving benefit from the programs at Higginsville.

■ The order entered by the court directing placement of David at Woodhaven, a placement opposed by the guardian, arbitrarily interjected the court's placement determination in a field over which the court has no fact finding jurisdiction. It is the exclusive prerogative of the director of the Division of Mental Retardation to order placement, subject to judicial review of that decision on petition of the client, parent or guardian. At most, the court's function in review is under the constraints of Chapter 536, RSMo.1986, which certainly does not include evidentiary hearings scheduled by the court on its own initiative.

By reason of the disposition made of this point, it is unnecessary to consider the guardian's argument that the court interfered with the statutory powers and duties

**2.** All references to sections of Chapter 633 are to RSMo.1986 (Laws 1980, H.B. 1724).

of a guardian by entry of the described orders.

The order appointing guardian ad litem dated December 18, 1985, the order for placement and the allowance of fees and costs dated February 19, 1986 are set aside as void for want of jurisdiction. The order to show cause dated May 6, 1986 is quashed.

All concur.