

# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. BETTY GROOMS,  )
                             )
        Relator,            )
                             )
v.                          )        No. SC99794
                             )
THE HONORABLE STEVEN A.     )
PRIVETTE,                   )
                             )
        Respondent.         )

*Opinion issued May 16, 2023*

## ORIGINAL PROCEEDING IN PROHIBITION

Betty Grooms petitions this Court for a writ of prohibition or mandamus to terminate a proceeding initiated against her for contempt of court. Grooms' request for relief stems from a court order entered by the Honorable Steven A. Privette directing her, the elected circuit clerk of Oregon County, to prepare a spreadsheet of court costs assessed in criminal cases after local sheriff departments alleged their departments had not received reimbursement from the State of Missouri for costs incurred incarcerating individuals in their county jails. When she allegedly failed to comply with this court order, Judge Privette ordered Grooms to show cause why she should not be held in contempt of court. After Judge Privette overruled her motion to dismiss the contempt action, Grooms petitioned for

a writ of prohibition or mandamus, and this Court issued a preliminary writ prohibiting Judge Privette from proceeding further in the matter. Because Judge Privette lacks authority to hold Grooms in contempt for her alleged deficiencies in complying with the court order, the preliminary writ is made permanent.

## Background

Judge Privette is the circuit and presiding judge for the 37th judicial circuit, which includes Howell, Oregon, and Shannon counties. Betty Grooms is the duly elected clerk of the circuit court of Oregon County. In early 2022, the sheriffs of both Howell and Oregon counties complained to Judge Privette that their departments had not been reimbursed by the State of Missouri for costs incurred incarcerating individuals in their county jails. Pursuant to state law, the circuit clerk prepares a bill of costs for all expenses incurred in criminal cases that are chargeable by law to the state. The clerk includes in the bill of costs the jail boarding costs. Once prepared by the clerk, the judge reviews and certifies the bill of costs, and the state reimburses counties for these costs as provided by statute.

The complaint from the Howell County sheriff stemmed from the incarceration of an individual in the Howell County jail on charges originating from an Oregon County case. The Howell County sheriff informed Judge Privette he had provided Grooms with certification of his department's costs associated with incarcerating this individual but his department had not received reimbursement from the state. Judge Privette then realized that, as presiding judge, he was receiving bills of costs for expenses associated with

2

incarceration in Howell and Shannon counties from the circuit clerks of those counties but was not regularly receiving bills of costs from Oregon County.

After an informal inquiry did not resolve the matter to his satisfaction, Judge Privette issued an order directing Grooms to prepare a spreadsheet of all criminal cases disposed of in Oregon County from January 1, 2019, to the present. The order specified that the spreadsheet include "the style and case number of each case, and with specific reference thereto, the date a complete cost bill was prepared, the date same was properly certified and filed with the Office of the State Courts Administrator and any other appropriate state agency, and the expected amount of state reimbursement." In response, Judge Privette alleges Grooms forwarded more than 800 pages of material consisting of every docket entry in every criminal case spanning the requested period. Grooms later submitted a second response in spreadsheet format, but Judge Privette claims Grooms' second response also did not provide the information he requested in his order.

Judge Privette then issued a separate order directing Grooms to appear before the court to show cause why she should not be held in contempt for failure to comply with his court order. He appointed a prosecuting attorney to prosecute the case. Grooms then filed a third response, which allegedly came closer to compliance but still allegedly failed to comply with the court order. The prosecuting attorney filed a motion for contempt, and the contempt proceeding was set before Judge Privette on September 6, 2022.

Before the hearing, Grooms filed a motion for change of judge and a motion to dismiss, both of which Judge Privette overruled. She then petitioned this Court for a writ of mandamus and prohibition compelling Judge Privette to sustain her motion to dismiss

3

and prohibiting the prosecution of the contempt action.[1]  This Court issued a preliminary writ of prohibition directing Judge Privette to dismiss the contempt motion or to show cause why the writ should not be made permanent.  After briefing and oral argument, this Court took the matter under submission.

## Standard of Review

This Court has jurisdiction to issue original remedial writs pursuant to article V, section 4.1 of the Missouri Constitution.  "The writ of prohibition, an extraordinary remedy, is to be used with great caution and forbearance and only in cases of extreme necessity."  *State ex rel. T.J. v. Cundiff*, 632 S.W.3d 353, 355 (Mo. banc 2021) (internal quotation omitted).

> "A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted."

*Id*. (internal quotation omitted).

---

[1] Prior to petitioning this Court for relief, Grooms sought a writ of prohibition and mandamus against Judge Privette in the court of appeals.  Upon receipt of her petition, the court of appeals stayed the contempt proceeding and ordered Judge Privette to file written suggestions explaining why the court should not issue a writ based on Grooms' allegations.  After Judge Privette filed suggestions in opposition, the court of appeals quashed its stay order and denied Grooms' petition for relief.  In this Court, Grooms' petition also sought to compel Judge Privette to sustain her motion for change of judge and to withdraw the order appointing the prosecuting attorney to pursue the contempt action.  In her brief before this Court, however, Grooms abandoned her request and argument that Judge Privette withdraw the order appointing the prosecuting attorney.

**Analysis**

At issue in this case is the scope of the court's authority over the circuit clerk in his or her performance of statutorily required duties that are unrelated to the court's judicial function. Article V, section 1 of the Missouri Constitution vests the "judicial power of the state" to this Court, the court of appeals, and circuit courts. This judicial power is exercised in large part through the circuit courts who possess "original jurisdiction over all cases and matters, civil and criminal." Mo. Const. art. V, § 14.

"The judicial power granted to the courts by the constitution is the power to perform what is generally recognized as **the judicial function—the trying and determining of cases in controversy**." *State ex rel. Pulitzer Pub. Co. v. Coleman*, 152 S.W.2d 640, 646 (Mo. banc 1941) (emphasis added), *abrogated on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968). "It includes those incidental powers which are necessary and proper to the performance of that function." *Id.* The power to seek and punish for contempt is one such incidental power. *Id.* (noting a court's power to punish for contempt is "derived from the constitution" as "part of the inherent judicial power of the courts"); *Smith v. Pace*, 313 S.W.3d 124, 129 (Mo. banc 2010) ("Missouri courts have … an inherent power under the constitution to punish for contempt[.]"). This power is beyond dispute.[2] Its use is confined,

---

[2] "The power to punish for contempt is as old as the law itself, and has been exercised so often that it would take a volume to refer to the cases." *State ex inf. Crow v. Shepherd*, 76 S.W. 79, 83 (Mo. 1903), *overruled on other grounds by Ex parte Creasy*, 148 S.W. 914 (Mo. 1912). "From the earliest dawn of civilization, the power has been conceded to exist … its existence has never been denied." *Id.* It is "[t]he most important and essential of the inherent powers of a court" and is necessary for the court "to protect itself against those who disregard its dignity and authority or disobey its orders[.]" *State ex rel. Gentry v. Becker*, 174 S.W.2d 181, 183-84 (Mo. 1943).

5

however, and limited to those circumstances in which the power is necessary to perform the court's judicial function. *Coleman*, 152 S.W.2d at 646.

This Court addressed the limitation of the court's authority in the exercise of its judicial function in *State ex rel. Geers v. Lasky*, 449 S.W.2d 598 (Mo. banc 1970). In *Geers*, the circuit clerk, pursuant to his statutory duties, reassigned a deputy clerk of a circuit court division and assigned another deputy to that particular division. *Id.* at 599. In response, the division's circuit judge indicated he did not approve of the substitution. *Id.* When the circuit clerk failed to rescind his reassignment, the judge proceeded against the clerk for contempt, alleging the clerk violated a local court rule providing that appointment or removal of any deputy clerk must be approved by the division's judge. *Id.* The clerk petitioned this Court for a writ to prevent the judge from proceeding in the contempt action. *Id.*

The Court in *Geers* considered whether the circuit judge had the authority to control the appointment of a deputy clerk to a specific position within the court. *Id*. at 600-01. The Court recognized, "It has long been the law of this state that courts of record have the inherent authority to make rules governing the practice in and operation of said courts, provided the rules are in harmony with the law." *Id*. at 600. Pursuant to this inherent authority, the court possesses the power "**to do all things reasonably necessary for the administration of justice and in order that it may preserve its existence and function as a court**[.]" *Id*. at 601 (emphasis added) (quoting *Gentry*, 174 S.W.2d at 183). This Court noted, however, the court's inherent power is not without limit. *Id.* "The limitation on the courts' inherent power is that **the expense incurred or the thing done must be**

6

**reasonably necessary to preserve the courts' existence and protect it in the orderly administration of business**." *Id.* (emphasis added) (quoting *Gentry*, 174 S.W.2d at 183). The Court went on to find the circuit court lacked authority, "inherent or otherwise," to "control the details of the operation of [the clerk's] office."[3] *Id.* Because the court lacked authority to dictate the appointment of a deputy clerk to a specific position within the court, this Court granted the writ relief requested and prevented the judge from proceeding further in the contempt action against the clerk. *Id.*

This Court specifically addressed the limitations of the court's power to punish for contempt in *Coleman*, 152 S.W.2d 640. In that case, a newspaper editor and cartoonist published an editorial disparaging the St. Louis circuit court in its handling of a recently dismissed case. *Id.* at 641-44. Shortly thereafter the circuit attorney initiated a legal action charging contempt. *Id.* at 644. Addressing the circuit court's authority to proceed with the contempt action, this Court discussed the nature of the court's power to punish for contempt as "derived from the constitution" as "part of the inherent judicial power of the courts[.]" *Id.* at 646. The Court further explained, "The judicial power granted to the courts by the constitution is the power to perform what is generally recognized as **the judicial**

---

[3] The Court in *Geers* also found the judge lacked authority under section 483.140, RSMo 1959, to control the appointment of a deputy clerk to a specific position. 449 S.W.2d at 600-01. Section 483.140, RSMo 2016, provides:

> It shall be the special duty of every judge of a court of record to examine into and superintend the manner in which the rolls and records of the court are made up and kept; to prescribe orders that will procure uniformity, regularity and accuracy in the transaction of the business of the court; to require that the records and files be properly maintained and entries be made at the proper times as required by law or supreme court rule, and that the duties of the clerks be performed according to law and supreme court rule[.]

7

**function—the trying and determining of cases in controversy**.” *Id.* (emphasis added).

Applying this rule, the Court held, because the power to punish for criticism of the court in regard to a past case **“is unnecessary as a safeguard to the proper functioning of the court as a judicial tribunal**, such publications do not constitute punishable contempt.” *Id.* at 647-48 (emphasis added).

The historical understanding of contempt powers set forth in *Coleman* was more recently affirmed by this Court in *Smith*, 313 S.W.3d 124. In that case, Smith sought a writ of habeas corpus after being incarcerated for contempt based on strong words he used disparaging the prosecuting attorney and circuit judge. *Id.* at 126-27. This Court, citing *Coleman*, reiterated that the court’s inherent power to punish for contempt is tied to its “judicial function under the constitution–the trying and determining of cases in controversy.” *Id.* at 130 (internal quotation omitted). The Court went on to state, “The power to punish for contempt should be used sparingly, wisely, temperately and with judicial self-restraint.” *Id.* (quoting *In re Estate of Dothage*, 727 S.W.2d 925, 927 (Mo. App. 1987)). Applying this standard and relying on caselaw pertaining to criticism of a court, the Court ordered Smith to be discharged from his term of incarceration for contempt. *Id.* at 131-37.

Likewise, the court of appeals and at least one other jurisdiction have recognized the power to punish for contempt can be exercised “**only** if the judicial function is integrally threatened.” *Dothage*, 727 S.W.2d at 927 (emphasis added) (citing *McMilian v. Rennau*, 619 S.W.2d 848, 850-52 (Mo. App. 1981)). In a factually similar case, the Illinois Supreme Court found certain administrative court orders requiring the collection of blood samples

8

from convicted sex offenders were "not in furtherance of a judicial function" of the court and a contempt sanction for failure to obey those orders was "not consistent with the exercise of the court's traditional and inherent power of contempt." *Murneigh v. Gainer*, 685 N.E.2d 1357, 1369 (Ill. 1997). This understanding is in accordance with the general principles of the court's inherent powers as set forth in *Geers*, 449 S.W.2d 598; *Coleman*, 152 S.W.2d 640; and *Smith*, 313 S.W.3d 124.

In the instant case, the circuit court proceeded against Grooms for contempt of court for her alleged deficiencies in complying with its order directing her to prepare a spreadsheet regarding bills of costs and state reimbursement of incarceration costs. By statute, the circuit clerk is required to calculate and determine the costs that have accrued in criminal cases and prepare a bill chargeable to the state containing certain costs payable to the county as provided by law. Sections 550.140, 550.020[4]. Pursuant to section 221.105.2, RSMo Supp. 2022, the clerk must include in the bill of costs county incarceration costs that are properly chargeable to the state.[5] The judge is required to "strictly examine[] the bill of costs" and verify, among other things, that the defendant was convicted of an offense or offenses punishable by death or imprisonment in the penitentiary, that the services were rendered for the prosecution of these offense or offenses, that the fees charged are expressly authorized by law, and that they are properly

---

[4] All statutory references are to RSMo 2016 unless otherwise indicated.
[5] There is no statute expressly authorizing the taxation of jail board bills as court costs against a criminal defendant. *See State v. Richey*, 569 S.W.3d 420, 424 (Mo. banc 2019). Certain incarceration costs, however, are includable in bills of costs payable to the county by the state as provided in section 221.105, RSMo Supp. 2022.

9

taxed against the state. Section 550.210. The bill of costs is then to be certified to the director of the department of corrections for the state to reimburse the county as appropriate. Sections 550.190, 550.260.

The preparation and certification of bills of costs charging the state for incarceration costs are clearly statutory duties of the circuit clerk and judge. Completion of this task, however, simply serves to reimburse counties for their costs to incarcerate individuals in certain criminal cases by way of payment from the state. *See* section 221.105, RSMo Supp. 2022. The clerk is required to assist in facilitating this transaction, but the clerk's role in this regard is a statutory duty unrelated to the resolution of any issue pertaining to the underlying cases. The clerk's action or inaction in completing this task does not affect the ability of the court to "try[] and determine[] … cases in controversy." *C.f. Coleman*, 152 S.W.2d at 646. Moreover, the reimbursements at issue have no impact on the Court's budget nor otherwise affect the Court's ability to operate in its judicial role. *C.f. Dothage*, 727 S.W.2d at 927 (holding failure to satisfy judgment for court costs did not "integrally threaten[]" the "judicial function").

For these reasons, the circuit court in this case lacks the authority to seek and hold Grooms in contempt. Holding Grooms in contempt for the particular shortcomings alleged is "unnecessary as a safeguard to the proper functioning of the court as a judicial tribunal[.]" *C.f. Coleman*, 152 S.W.2d at 647; *see also Geers*, 449 S.W.2d at 600-01 (holding the court's inherent power is to "do all things that are reasonably necessary for the administration of justice" and limited accordingly). Judge Privette, therefore, exceeded

10

his authority by proceeding against Grooms for contempt under these circumstances.[6] *C.f.*

*Smith*, 313 S.W.3d 124 (finding contempt was not warranted to punish strong words disparaging the prosecuting attorney and judge of the circuit court); *Coleman*, 152 S.W.2d 640 (finding contempt was not warranted to punish publishers disparaging the circuit court); *Dothage*, 727 S.W.2d 925 (finding contempt was not warranted when the appellant failed to satisfy judgment for court costs); *McMilian*, 619 S.W.2d 848 (finding contempt was not warranted to punish vulgarities directed at a judge through the telephone by way of the bailiff).

This Court's holding, however, should not be interpreted to suggest presiding judges and the courts they serve cannot request from the circuit clerk information related to the reimbursement of incarceration costs.[7] Pursuant to the statutory duties of the clerk and the court to prepare and certify costs chargeable to the state in criminal cases, it was more than reasonable for Judge Privette to request the information he sought from Grooms. The court

---

[6] Judge Privette also cites section 476.110 to support his position. Section 476.110 states: "Every court of record shall have power to punish as for criminal contempt persons guilty of … [w]illful disobedience of any process or order lawfully issued or made by it[.]" As this Court stated in *Smith*, however, section 476.110 neither expanded or limited the court's inherent authority to seek contempt. 313 S.W.3d at 130 n.8.

[7] Management of the circuit courts rests with each circuit's presiding judge, who possesses general administrative authority over the circuit court under the supervisory authority of the supreme court. Mo. Const. art. V, sec. 15.3 ("The presiding judge shall have general administrative authority over the court and its divisions."); Mo. Const. art. V, sec. 4.1 ("Supervisory authority over all courts is vested in the supreme court[.]"); *see also* section 478.240.2 ("Subject to the authority of the supreme court and the chief justice under Article V of the Constitution, the presiding judge of the circuit shall have general administrative authority over all judicial personnel and court officials in the circuit[.]").

merely lacked the authority to hold Grooms in contempt for her alleged failure to provide information about the reimbursement of costs counties incurred to incarcerate individuals.

At first blush, it may appear problematic to find Judge Privette could request the particular information at issue yet did not have authority to enforce that directive through a contempt proceeding. This Court recognizes this case presents a unique situation in which the circuit courts of Missouri are, by statute, required and authorized to complete tasks unrelated to the administration of justice. But that is only to say contempt is not the appropriate mechanism to ensure completion of such tasks. There remain many lawful and preferable options available to Judge Privette and other presiding judges who may find themselves in this or a similar circumstance with a circuit clerk.

In the event of a disagreement between a presiding judge and an elected circuit clerk, the judge should always take steps to resolve the dispute without undertaking the extreme act of personally initiating legal action or obstructing the circuit clerk's role as an elected officer of the county and circuit court. The presiding judge should discuss the dispute with the circuit clerk, setting forth the reasons for the directive or position taken by the presiding judge. If this does not resolve the dispute, the presiding judge should consider discussing the matter with other judges, the circuit court en banc, other presiding judges, and the chair of the presiding judges' executive committee. The state courts administrator's office also can be contacted to mediate and settle the dispute.

After pursuing such alternatives, the presiding judge may reevaluate his or her position or find other potential alternatives to resolve the situation. Officials and entities with greater authority can be contacted to mediate and resolve disagreements such as the

12

clerk of the Supreme Court, the chief justice, or their designee. Such alternative dispute resolutions methods are preferable to avoid, at all costs, the judge initiating and presiding over a legal action against the elected circuit clerk. *See Smith* 313 S.W.3d at 130 ("The power to punish for contempt should be used sparingly, wisely, temperately and with judicial self-restraint." (quoting *Dothage*, 727 S.W.2d at 927)).

If Grooms was not fulfilling her statutory obligations and duties as alleged in this particular case, legal remedies also existed beyond Judge Privette initiating and presiding over a contempt proceeding against her. Among other legal alternatives, the counties and sheriff departments who are alleged to be financially harmed by Grooms' inaction could pursue a writ of mandamus or declaratory and injunctive relief to compel her to comply with her statutory obligations and duties.[8] *See BG Olive & Graeser, LLC v. City of Creve Coeur*, 658 S.W.3d 44, 47 (Mo. banc 2022) ("The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty that one charged with the duty has refused to perform." (internal quotation omitted)); *ACLU of Mo. v. Ashcroft*, 577 S.W.3d 881, 896-900 (Mo. App. 2019) (holding declaratory and injunctive relief are available to force the secretary of state and attorney general to perform obligations required by law). These legal remedies and other alternatives noted above would retain the circuit court's neutral role to impartially decide legal disputes presented to the court and avoid the undesirable need for a judge to initiate legal action against an elected circuit clerk when

---

[8] This Court takes no position as to whether Grooms was, in fact, failing to fulfill her statutory duties or whether the counties and sheriff departments would be entitled to relief as these issues are not before the Court and are not material to the disposition of this case.

13

the interests of the citizens are better served by the judge's and clerk's cooperation.[9] It was simply unnecessary – and unauthorized – for Judge Privette to initiate a contempt proceeding against Grooms under these circumstances, justifying this Court's employment of the extraordinary remedy of prohibition.[10] *Cundiff*, 632 S.W.3d at 355 ("A writ of prohibition is appropriate … to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended[.]" (internal quotation omitted)).

## Conclusion

Because Judge Privette exceeded his authority by ordering Grooms to show cause why she should not be held in contempt of court, the preliminary writ is made permanent. The circuit court is ordered to take no further action in this matter other than entering an order dismissing the prosecutor's motion seeking to hold Grooms in contempt.[11]

_____
W. Brent Powell, Judge

All concur.

---

[9] In the event of serious misconduct, however, Missouri law also provides several remedies for the extreme case in which it is necessary to remove an elected circuit clerk. *See Allsberry v. Flynn*, 628 S.W.3d 392, 396-97 (Mo. banc 2021).

[10] The circuit court also erred in overruling Grooms' motion to dismiss the prosecutor's motion for contempt because the latter motion was not in compliance with Rule 36.01. Rule 36.01(b) provides that a notice for criminal contempt "shall … describe it as such." In briefing before this Court, Judge Privette indicated "[t]he underlying matter is clearly an indirect criminal contempt proceeding"; however, the prosecutor's motion for contempt does not describe it as such.

[11] This Court declines to address Grooms' motion for a change of judge as the issue is moot. Finally, the Court overrules Judge Privette's motion for attorney fees and costs taken with the case.

14