[No. 22613.   Department Two.   November 5, 1930.]

*In the Matter of the Estate of* R. WARD, *Deceased.*

GERTRUDE MILLER, *as Administratrix, Respondent,* v.
IDA BECK *et al., Appellants.*[1]

[1]Reported in 292 Pac. 737.

*Crowder & Crowder,* for appellants.

*Chas. M. Fouts* and *C. B. W. Raymond,* for respondent.

BEALS, J.—R. Ward and Axsiah Ward, his wife, had six children who survived them, including the plaintiff Gertrude Miller and the defendant Ida Beck. Axsiah E. Ward died May 10, 1910, leaving no estate save an interest in a small tract of land in the city of Seattle. The expenses of her funeral were paid by her son Eugene S. Ward.

R. Ward died August 31, 1929, aged ninety-two years. Shortly after his death, his daughter Gertrude Miller was appointed administratrix of her father's estate, and soon after her appointment she caused to be served upon the defendants Ida Beck and Henry Allen Beck, her husband, a citation requiring defendants to appear in the superior court and answer concerning certain property belonging to the estate of R. Ward, which the administratrix alleged defendants had in their possession and were withholding from her. The administratrix filed a complaint setting forth the facts upon which her claim that defendants had in their possession property belonging to the estate was based, to which complaint defendants filed separate answers.

Certain proceedings having also been instituted in connection with the estate of Axsiah E. Ward, the two matters were consolidated, and the issues raised therein tried to the court sitting without a jury; the court, after a lengthy hearing, adjudging that defendants de-

liver to the clerk of the court within five days, for the benefit of plaintiff, as administratrix of the estate of R. Ward, the sum of $3,251.04, and that, in the event of the failure of defendants to comply with the foregoing provisions of the judgment, defendants be adjudged in contempt of court. From this judgment, defendants have appealed.

The judgment appealed from is based, *inter alia,* upon an express finding made by the trial court to the effect that the money which appellants were by the judgment ordered to pay into court was, at the time of the entry of the judgment, in the possession and under the control of appellants, and that the same was the property of the estate of R. Ward, deceased.

The following facts pertinent to the issues to be adjudicated herein appear from the evidence: Mr. Ward, a Union veteran of the Civil War, was the recipient of a pension from the government in the sum of $72 per month, and for two years prior to January, 1927, was an inmate of the soldiers home at Orting; that he then had on deposit in a savings account in a Seattle bank the sum of $3,750, representing the proceeds of his pension; that shortly after January 1, 1927, appellants took Mr. Ward to their home in the city of Seattle, where he remained until his death; that January 3, 1927, appellant Ida Beck withdrew from her father's savings account all the money standing to his credit and deposited the same to her own credit in a savings account which she opened with the same bank.

The money so withdrawn from her father's bank account by Mrs. Beck amounted to $3,738.28, and of this money Mrs. Beck, February 7, 1927 (from her new account) withdrew $738.28, and on the 25th of the same month $3,000, leaving in the account one dollar only, with which the account was credited on the same

day as the last withdrawal. At this time Mrs. Beck had a savings account in the Greenwood National Bank of Seattle, in which she deposited the $3,000 which she withdrew from her father's savings. This money remained in Mrs. Beck's savings account until September 4, 1929, shortly after her father's death, when she withdrew all the money standing to her credit in this account, together with the interest which had accrued thereon.

It is important to note that Mrs. Beck withdrew no money whatsoever from this account from the time she deposited the $3,000 therein until she closed the account September 4, 1929, after some of her father's heirs had asked her concerning what money he had left. It appears beyond question that, during the time Mr. Ward resided with appellants, Mrs. Beck received his pension money in the sum of $72 per month, and expended the same as in her judgment seemed best.

The trial court found that appellants had received in cash belonging to Mr. Ward, including the withdrawals from his savings account above referred to, from January 1, 1927 up to the date of Mr. Ward's death, the sum of $6,077.28, the court allowing appellants credit against this sum as follows: Ambulance hire, $35; funeral expenses, $750; medical care, $50; board, lodging, care and other expenses, $2,304; total, $3,139. Deducting this amount from the sum which the court found appellants received, and adding to the difference interest from January 3, 1927, the court reached the balance which appellants were directed to pay into court for the benefit of the estate.

It appears that Mr. Ward, during the month of December, 1926, while an inmate of the soldiers' home, fell, injuring his hip. He was blind and, due to his physical infirmities and weakness incident to his great

age, was, of course, unable to care for himself and required constant attention. Appellants contend that, when they took him from the soldiers' home, or shortly thereafter, it was agreed between Mr. Ward and appellant Ida Beck that appellant would care for her father during his life and see that his funeral was held according to his wishes, and that in consideration thereof appellant should receive his property and retain the same as her own.

Appellants assign error upon the action of the trial court in propounding certain questions to witnesses at the trial; upon rulings of the trial court rejecting evidence offered on behalf of appellants; in denying appellants' challenge to the sufficiency of the evidence; in refusing to make findings of fact in appellants' favor; in overruling appellants' motion for a new trial; and in making the findings which were entered, and in entering judgment against appellants.

■ In such a proceeding as this, presenting many direct issues of fact, the trial judge has a large discretion in propounding questions to witnesses in order that he may gain all the information possible to aid him in correctly determining the bitterly disputed questions presented by the respective parties. We do not find that the trial court, in questioning any of the parties or witnesses, committed error, or in any manner violated the rules of evidence applicable to such a situation as was presented for determination.

■ Appellants complain of rulings of the trial court in striking and rejecting evidence. The testimony in this proceeding was oftentimes in direct conflict. Considerable bitterness was shown by the parties, and it is evident that the statement of the trial court in his memorandum decision to the effect that some of the witnesses must necessarily have committed perjury is correct. Some of the relatives of Mr. Ward having

testified that Mrs. Beck had told them on several occasions during her father's illness that he would not recognize them if he saw them, Mrs. Beck, while testifying as a witness on her own behalf, was asked whether or not during this time her father did see one of her brothers and her sisters and recognize them, to which she answered in the affirmative. On respondent's motion this testimony was stricken from the record. In view of respondent's testimony, Mrs. Beck's evidence was properly admitted and should not have been stricken, but being in the record the erroneous ruling of the trial court does not constitute reversible error, and on this appeal the testimony which was stricken is considered as part of the record before us.

Appellants also complain of the ruling of the court refusing to allow Mrs. Beck to testify as to her father's mental condition on or about January 1, 1927, approximately the date she took her father to her home in Seattle. Other questions along the same line were propounded to Mrs. Beck, to which objections were sustained. This testimony was under the law admissible for what it was worth, but, the action having been tried to the court without a jury, the erroneous rejection of testimony does not call for a reversal of the judgment and the granting of a new trial, unless it appears that, giving the testimony which was sought to be elicited the most favorable possible construction in favor of appellants, it can be held that its admission might have changed the result reached by the trial court. In considering this appeal we will assume that the questions referred to were answered by appellant Ida Beck and that she, in her answers, stated that her father was at the times referred to in all respects mentally competent and fully capable of transacting ordinary business. On this question Mrs. Beck's testi-

mony would have been merely cumulative, as other of appellants' witnesses testified concerning Mr. Ward's mental state.

■ Appellants also complain of rulings of the trial court in connection with the testimony of C. M. Benson, appellants' son-in-law, who testified as a witness on behalf of appellants. The witness stated that, about Thanksgiving, 1926, while Mr. Ward was visiting appellants, the witness heard a conversation between Mrs. Beck and her father, in which Mr. Ward asked Mrs. Beck if she would keep him for the rest of his life if he would give her all of his money. The witness stated also that he heard Mrs. Beck's answer to this question, but upon respondent's objection the witness was not allowed to state what her answer was. The witness might well have been allowed to answer this question, respondent's objection thereto going rather to the weight of the evidence than to its competency. We do not find, however, that this ruling of the court constitutes reversible error, and again we assume, in passing upon this appeal, that the witness answered the question in effect that Mrs. Beck agreed to her father's proposition.

Appellants made no offer of proof upon the objection being sustained to the question above referred to propounded to Mr. Benson, but, without considering the effect of such an omission upon appellants' right to assign error upon such an adverse ruling of the trial court, we will consider that appellants have the full benefit of the evidence which it appears they endeavored to introduce. In view of our determination upon these questions, and the fact that we consider as evidence in the case certain matters which were not considered by the trial court, we do not give the same weight to the court's findings that they would in ordinary cases receive, but we have examined the

original statement of facts and formed our conclusion from such examination without relying upon the court's findings upon disputed questions of fact, as to which the rejected testimony might have been pertinent.

Other questions are argued by appellants concerning the rejection of evidence offered by them, but we fail to find that, in making the rulings complained of, the trial court committed reversible error.

█ A careful examination of the record convinces us that on the evidence the judgment rendered by the trial court was as favorable to appellants as the facts warranted, and that the evidence clearly preponderates in favor of respondent's contention that, at the time of the trial, appellants had in their possession, belonging to the estate of R. Ward, the sum of money which the trial judge directed them to pay into court for the benefit of the estate.

In this connection the following occurred on the examination of appellant Ida Beck, touching her present possession of the money:

"Q. Where is that money now? A. I have some of it. Q. How much have you got? A. I could not tell you just what I have. Q. About how much? A. Well, there may be a thousand or fifteen hundred, or something like that, and maybe more. Q. Haven't you got any idea how much money you have got? A. I don't know just what it is; I could not tell you. . . . Q. Well, where is the balance of the money? A. I have some. Q. Where is it at the present time? A. I have that. It is not deposited. Q. Where is it? A. I have it at home. Q. In your home? A. Yes, sir. Q. How much? A. Well, I can't say just exactly. It may be a thousand dollars or five hundred or something like that. Q. In your home? A. Yes, sir."

Mrs. Beck's testimony in this connection is most unsatisfactory, and, coupled with her admission that she

withdrew the money from her bank account immediately after a conversation with her brothers and sisters, in the course of which they inquired as to how much money their father left, leads irresistibly to the conclusion that appellant Ida Beck was not candid in her explanation to the court, and that her testimony, in this particular at least, is not entitled to much consideration. Her statements as to the amount of cash in her possession, even if considered as a denial that she had any greater sum than she admitted having, were no wise binding upon the trial court, and that court was clearly justified in disregarding them. The trial took place in January, 1930, and Mrs. Beck's bank book showing her account with the Greenwood Bank, which book is in evidence, shows that she took into her personal possession September 4, 1929, $3,423.26, of which $3,000 was directly traceable to her father's savings account. Mrs. Beck received also at the same time the interest on that money.

We are of the opinion that the evidence preponderates against Mrs. Beck's contention that her father had given her his money in consideration of a promise on her part to care for him, and that the evidence also warrants the making of a finding that appellants, at the date of the trial, still had in their possession the money which they were ordered to turn over, and that this money was the property of the estate of R. Ward, deceased, and that the administratrix of that estate was entitled to the immediate possession thereof.

Appellants complain of the judgment in that it orders appellants to turn over a specified sum in money, under penalty of standing in contempt should they fail to do so, appellants claiming that the judgment violates art. I, § 17, of the constitution of the state of Washington, which provides that in this state there shall be no imprisonment for debt. It must be

remembered, however, that this is not an action to recover judgment for money due to the estate, but to recover specific property belonging to the estate in the possession of appellants. The mere fact that the property happens to be money does not change the rule, which is the same whether the property is money, or a watch, or other personal property. Once the court is convinced that a person, over whose person the court has obtained jurisdiction, is withholding from an administrator property belonging to the estate, the administrator is entitled to an order that the property be turned over, and the order, if disobeyed, may be enforced by contempt proceedings.

The judgment appealed from is not primarily for a debt, but directs the turning over of specific personal property. The judgment contains no alternative provision for the entry of judgment against appellants and the issuance of execution therefor, but is strictly an order directing the production in court of property belonging to the estate. We are not now concerned with the imposition of any punishment which may be visited upon appellants should they fail to comply with the order of the court; that question has never been presented to the trial court, which will, of course, hear appellants before directing their punishment for contempt in case they refuse to comply with the order appealed from.

Appellant Henry Allen Beck contends that he is improperly embraced within the terms of the order and should be released from the operation thereof. Our examination of the record convinces us that this appellant was properly included within the terms of the order, and that in so doing the trial court did not err.

The judgment appealed from is amply supported by

262

the record before us, and the judgment appealed from is in all things affirmed.

MITCHELL, C. J., FULLERTON, PARKER, and MILLARD, JJ., concur.