In re Estate of Minnie Lolita Willich, Deceased. Robert M. Lunsford, Executor, Appellee, v. John F. Paquin, Appellant.

Gen. No. 9,652.

Opinion filed May 26, 1949. Rehearing denied August 29, 1949. Released for publication August 29, 1949.

C. B. HANKEL, JR. and JOSEPH W. GRADY, both of Chicago, for appellant.

REDMON, SMITH & HULL, of Decatur, for appellee; MARVIN D. JORGENSEN, of Decatur, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Robert M. Lunsford, as executor of the will of Minnie Lolita Willich, deceased, filed a petition for citation in the county court of Macon county, sitting in probate, under section 183 of the Probate Act [Ill. Rev. Stat. 1947, ch. 3, par. 335; Jones Ill. Stats. Ann. 110.432]. The petition alleged, in substance, that the respondent, John F. Paquin, had in his possession certain assets of said estate, to wit: the proceeds of three life insurance policies upon the life of Alfred William Willich, deceased husband of Minnie Lolita Willich, and paid to her as beneficiary thereunder. The respondent made a special appearance in the county court, contesting the jurisdiction of the court, and said petition was dismissed. The executor of the will appealed to the circuit court. The respondent again made a special appearance, contesting the jurisdiction of the court, and again moved to dismiss. The motion was denied, the cause proceeded to a hearing, and an order was entered that said respondent turn over to the executor the proceeds of said policies, less certain monies which he had theretofore delivered to the deceased during her lifetime. A motion to vacate said order was denied, and this appeal follows.

Respondent's main contention is that the circuit court had no jurisdiction to hear this petition because a citation will not lie under the Probate Act for the recovery of money.

Those things which the statute now in force permits to be collected or recovered in a citation proceeding are:

"*Personal property, books of account, papers or evidences of debt or title to lands* . . . ." (Ill. Rev. Stat. 1947, ch. 3, par. 335 [Jones Ill. Stats. Ann. 110.432].) (Italics ours.)

This is section 183 of the Probate Act which was passed in 1939.

Prior thereto, the statute read as follows:

"*Any goods, chattels, moneys or effects,* books of account, papers or any evidences of debt whatever. . . ." (Italics ours.)

It will be observed that in the Probate Act the words, "Any goods, chattels, moneys or effects," were eliminated, and there was inserted in lieu thereof, the words "personal property." From the fact that the word "moneys" was eliminated from the statute, respondent contends that there was no jurisdiction in the county court, sitting in probate, or in the circuit court on appeal to hear this petition.

With this we cannot agree.

██ We believe that the insertion of the generic term, "personal property," was meant to cover all of the specific items theretofore set forth in the statute, which were "goods, chattels, moneys or effects," and any other items of personal property which might not have been specifically mentioned. In using the broader and more inclusive words "personal property," we do not believe that the legislature intended to restrict the use of the citation proceedings to a narrower scope than had been permitted prior to the adoption of the Probate Act.

Section 9 of the Act, Ill. Rev. Stat. 1947, ch. 3, par. 159 [Jones Ill. Stats. Ann. 110.255], provides as follows:

"The Act and the rules now or hereafter adopted pursuant thereto shall be liberally construed to the end that controversies and the rights of the parties may be speedily and finally determined; and the rule that statutes in derogation of the common law shall be strictly construed does not apply."

██ Thus, there is an expressed intention of the legislature that the Act should be liberally construed, and we cannot agree with the narrow construction that respondent places on it. Certainly, money is personal property, and we think it clear that the legislature did not intend to eliminate proceedings to recover goods and chattels, and likewise, that it did not intend to eliminate the proceedings for the purpose of recovering money.

In the case of *Keshner v. Keshner,* 376 Ill. 354, a petition for citation was filed for respondents "to appear and show cause why they should not deliver to the petitioners stocks, bonds, notes and *cash* withheld." The Supreme Court, in commenting on this section of the Act, said at page 359:

"The proceeding may be merely for the purpose of obtaining information with no adversary aspects, or it may develop into an out and out suit for the recovery of money."

Furthermore, sec. 185 of the Act [Ill. Rev. Stat. 1947, ch. 3, par. 337; Jones Ill. Stats. Ann. 110.434] provides:

"If the respondent refuses to answer proper questions put to him or refuses to obey the court's order or judgment to deliver any personal property or, if converted, its proceeds or value, . . . ."

Into what would the personal property be converted? Obviously, into money. And when the legislature refers to "value," it can mean only money.

Therefore there is ample evidence of the legislature's intent that money can be recovered under this proceeding.

Respondent cites many cases, which he contends maintain his position that this section cannot be used for the purpose of collecting money. We have studied all of these cases, and many others. They hold that this section cannot be used for the purpose of collecting a debt, and the problem here is to determine whether or not this is a suit to collect a debt. In order to determine this question, it is necessary to inquire carefully into the facts.

Alfred William Willich, deceased, and Minnie Lolita Willich, deceased, were husband and wife, and were very close friends of the respondent, who was a brother of Alfred William Willich. Prior to the death of Mr. Willich, they moved to the respondent's apartment. Minnie was very close to the respondent, and had the utmost confidence in him, and considered him as her brother. She was bedridden, and unable to care for herself during the time she was in his home.

Alfred died, and on Minnie's petition, respondent was appointed administrator of his estate, of which Minnie was the sole beneficiary. Within three weeks after Alfred's death, Minnie received from the Acacia Insurance Company a check in the amount of $5,053.09, a check from the Metropolitan Life Insurance Company in the amount of $2,430.09, and a check from the Travelers Insurance Company in the amount of $4,000, all on policies under the terms of which she was the beneficiary. She indorsed these checks and delivered them to the respondent, who deposited them in his personal account. The citation petition seeks the return of this money.

After this deposit was made, Minnie remained at the respondent's home for about six weeks, and then entered St. Mary's Hospital at Decatur, Illinois, where she remained until her death, on January 28, 1947.

On the day of Alfred's death, a will was prepared for execution by Minnie, wherein she left all of her prop-

erty, except a radio, to the respondent. This will was never executed.

While Minnie was living with him, respondent gave her $1,000. After she moved to Decatur, respondent sent her $2,000, and later $1,500 additional.

Deceased received approximately $500 when she sold some furniture, which respondent deposited in the bank for her. Respondent deposited in the bank for her $248, which she received from her husband's social security.

Deceased kept a ledger in which she kept track of the money she received from the insurance policies.

After she was taken to the hospital, respondent wrote decedent a letter as follows:

"Dear Lee:

. . . I have sent a check for 1500.00 to the Decatur bank today. You can have more when you need it. *After all it is your money* and you shouldn't worry about using it for getting the best care you can for yourself. Getting well is more important than any thing else, and even if you had to use it all for that purpose it would be worth it, and you can always rely on us to help you in whatever way we could even if it were all gone!

"However your financial situation is still nothing to worry about as you haven't made too big a dent in your bank account.

"We expect to be down to see you some week end soon after the 1st of the year and I will bring the record down for you to go over yourself. . . .
As ever
Love—
Johnny." (Italics ours.)

The respondent also wrote the following letter to the deceased on October 21, 1946:

"Dear Lee:

"I just talked to Audra on the telephone and she told me you had already left for Decatur in the ambulance. I was very much surprised to hear that you had already gone, although I knew that it would be sometime today or tomorrow. I did want to see you before you left and give you the $200.00 in cash, which you felt you would need. However, I am sending a check for you in the amount of·$200.00, which you can have cashed and I am also transferring your account immediately to the Decatur bank to which I have added an additional $1,800.00. The Decatur bank will send the necessary signature cards, check book and pass book to your father and he will have to get them to you. . . .

Love and best wishes,
Johnny"

"P. S. I am enclosing a blank check for you to sign as "Lolita Willich," which will be necessary so that I can have a cashier's check issued by the LaSalle National Bank in the amount of the new balance of your own personal checking account, which will amount to a little over $2,300.00 (now that we have added $1,800.00 to it). The bank tells me that it is impossible to just transfer the checking account to the Millikin National Bank. The procedure we will have to follow is for you to draw a check for your complete balance to the LaSalle National Bank, have them issue a cashier's check payable to the Millikin National Bank, which we will send to the Millikin National Bank in order to open your account there. I am enclosing a duplicate of a letter that I have sent to the Millikin National Bank. Be sure to sign this check and I will fill out the necessary amounts, etc. and return to me in the enclosed envelope without delay, in order to have a checking account opened at the earliest possible time."

■ ■ This testimony is all uncontradicted, and comes from the mouth and the pen of the respondent.

We believe that it shows that there was a fiduciary relationship existing between the respondent and the deceased. The evidence clearly establishes that the respondent received $11,483.18, and that he returned to her, out of this amount, some $4,500. In view of the fiduciary relationship existing between the parties, the burden of showing that he is entitled to retain the money in question falls upon the respondent. He has not met the burden. The letters written by him, after deceased had delivered the money to him, show why the record is barren of any explanation that would allow respondent to keep this money. Attention is called again to the letter which the respondent wrote to the deceased:

*"After all it is your money* and you shouldn't worry about using it for getting the best care that you can for yourself. . . . However your financial situation is still nothing to worry about as you haven't made too big a dent in your bank account." (Italics ours.)

We have searched the record to find respondent's explanation for his effort to retain this money. There is not one statement in respondent's brief as to his right to retain this money, or in what capacity he held it. It is true that respondent attempted to relate some conversations with deceased, to which objection was sustained, but respondent made no offer of proof relating to the conversations. It is our opinion that it was decedent's money, and respondent was merely handling it for her because of her inability to do so herself.

It is further our opinion that a confidential relationship existed between the parties, and that there never was a relationship of debtor and creditor, and that this proceeding is not being used for the purpose of collecting a debt.

Respondent places great reliance upon the case of *In re Estate of Shanks*, 282 Ill. App. 1, which was de-

cided by this court in 1935. In that case, a guardian purchased certain shares in the Vermilion County Building Association, with funds of her ward, without any authority so to do. When the shares ceased paying dividends, the guardian sought to rescind the transaction, and started a proceeding under this citation section for the purpose of recovering the money which she had invested in the building association. We there held that the citation was not applicable to such a situation. The recitation of the facts seems to fairly demonstrate how different that is from the case at bar. There was no fiduciary relationship existing between the guardian and the building association, and the building association was holding no property belonging to the ward, as the respondent was doing in this case. The court held that the citation proceeding was not the proper proceeding for the collection of a debt. There is no debtor-creditor relationship here.

Respondent cites *Sims v. Powell,* 390 Ill. 610. Again, that case is not applicable to this proceeding, as the point involved there was as to the effect of a citation proceeding with reference to the title to real estate. The Supreme Court stated at page 617:

"Neither the present nor the former provisions confer, or even purport to confer, upon probate courts general equity jurisdiction and, specifically, the power to determine titles to real estate in citation proceedings."

Needless to say, we are not concerned with the question of title to real estate in this proceeding.

In the case of *Dawdy v. Strickland,* 378 Ill. 230, the facts were clear that the deceased had given certain bonds to the respondent in the citation proceeding. The respondent claimed them as a gift, while petitioner claimed that they were merely loaned to respondent. However, the evidence was clear that the bonds had matured, that respondent paid interest to deceased and the parties regarded themselves as debtor

and creditor. The court held that the relationship of debtor and creditor existed between the deceased and the respondent, and rightfully refused to allow citation proceedings to be used for the collection of the debt.

In the case of *Urban v. Hynes,* 285 Ill. App. 182, the court pointed out that the money sought to be recovered had been deposited by the decedent personally in a joint account with the defendant, and during her lifetime, creating a relationship of debtor and creditor. The money was not in possession of the defendant and the court denied relief for lack of jurisdiction.

It appears to us that the respondent misinterprets these cases, when he cites them all for the proposition that the probate court cannot be used to try a case for the recovery of money alleged to belong to an estate. These cases do not so hold. They hold that citation proceedings cannot be used for the purpose of collecting a debt. The money in this particular case was held by respondent in a fiduciary capacity. There was no debtor and creditor relationship.

■ Respondent relies upon the provisions of the Negotiable Instruments Act [Ill. Rev. Stat. 1947, ch. 98, par. 21 *et seq.;* Jones Ill. Stats. Ann. 89.021 *et seq.*] to show that he had good title to the checks when decedent indorsed the checks in blank and delivered them to him. Respondent overlooks, or assumes the really important point, and that is with what intent were the checks delivered to him by the deceased. There is no question but what indorsement and delivery could pass good title, if it had been the decedent's intention so to do; but respondent's own letter shows that he did not claim to be the owner of the property, when he advised her that it was her money, and she could do with it what she wished.

■ The estate of the deceased was pending in the county court of Macon county, and the venue and the citation proceedings were properly laid in that

county, even though the respondent was a resident of Cook county.

We find no error and the order of the circuit court of Macon county is hereby affirmed.

*Affirmed.*