NO. 4-06-0407      Filed 1/9/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: the Estate of MARCELLA T. LASHMETT, Deceased, CHERYL LASHMETT THOMAS, | ) ) ) ) | Appeal from Circuit Court of Scott County No. 00P4 |
| Petitioner-Appellee, | ) | |
| v. | ) | Honorable |
| CHRISTINE LASHMETT MONTGOMERY, | ) | James W. Day, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

This appeal arises from a citation to discover assets filed by the executor of the estate of Marcella T. Lashmett. Following an evidentiary hearing, the trial court found that the respondent to the citation proceedings was indebted to the estate and entered judgment in favor of the estate. We affirm.

I. BACKGROUND

Marcella T. Lashmett died testate on December 19, 1999. Her heirs at law were her two daughters, Cheryl Lashmett Thomas and Christine Lashmett Montgomery. The will named Christine as executor, but as the named executor took no action to open an estate, Cheryl filed a petition to admit the will to probate and was appointed as personal representative. She commenced citation proceedings against her sister shortly thereafter. The order at issue here is the result of an amended citation to discover assets filed on December 16, 2005.

During her lifetime, Marcella was engaged in the business of farming with her husband, who predeceased her. Christine also was engaged in farming. At some point, after the demise of Marcella's husband and prior to Marcella's death, Christine frequently borrowed farm equipment belonging to Marcella. On more than one occasion, Marcella's farm equipment was used as a trade-in on the purchase of new equipment titled in Christine's name alone. As each transaction was completed, Christine and her mother would agree on an amount of monetary compensation to be paid by Christine to Marcella. This course of dealing was established not only by the evidence adduced at the hearing on the citation but also by the provisions of Marcella's last will and testament executed on March 20, 1998.

Article III of Marcella's will described the course of dealings had between she and Christine:

"THIRD: FARM MACHINERY AND EQUIPMENT: At my death, I may own certain items of farm machinery and equipment which my late husband, James Lashmett, Jr., and I have used in our previous farming operation. I have allowed my daughter, Christine Lashmett Montgomery, to use this machinery in her farming operation. Also, I have periodically consented to allow the said Christine

Lashmett Montgomery to trade various items of said farm machinery and equipment for new equipment which she has purchased for her own farming operation and in her own name, and I have received the fair market value of my machinery traded for newer machinery and equipment. In each of these said trades, I have realized the full market value of said machinery and equipment as it was disposed of by me in said trades. In the event that I still own any item of farm machinery and equipment at my death, I hereby bequeath unto Christine Lashmett Montgomery, any and all items of said farm machinery and equipment; provided, however, that in the event the said Christine Lashmett Montgomery disposes of or trades any such item or items of farm machinery and equipment, as determined by the said Christine Lashmett Montgomery, in the sale or trade, shall be divided equally between my two daughters, Cheryl Lashmett Thomas and Christine Lashmett Montgomery, per stirpes."

In 1993, Marcella suffered health problems requiring

her hospitalization. At that time, she gave a power of attorney to Christine.  On September 28, 1997, Marcella subsequently executed a new power of attorney in favor of Christine, including a power for health care.  The evidence does not show that Christine ever used either powers of attorney except to pay her mother's bills during the times Marcella was hospitalized.

In September 1999, some three months before Marcella's death, Christine used a tractor belonging to Marcella as a trade-in for the purchase by Christine of a new tractor.  The trade-in credit generated was $55,296.28.  No money was paid to Marcella. Christine testified that she tried to pay her mother $20,000 for the use of the tractor as a trade-in and, in fact, provided at the hearing on the citation a check in that amount marked "void." Christine testified she voided the check after Marcella refused any payment for the old tractor.

The trial court granted the citation and, after hearing evidence, found that Christine was indebted to the estate in the amount of $55,296.28. Christine's motion for reconsideration was denied.  This appeal followed.

## II. ANALYSIS

Christine raises the following issues for review: (1) whether the citation was filed outside the applicable statute of limitations; (2) whether the citation improperly sought to recover a debt; (3) whether the decision of the trial court was

against the manifest weight of the evidence; and (4) whether the trial court erred in ordering Christine to pay a sum certain into the estate rather than awarding the estate an interest in the tractor. As to issues one, two, and four, our review is de novo as resolution of them involves purely questions of law. See Illinois Farmers Insurance Co. v. Marchwiany, 222 Ill. 2d 472, 476, 856 N.E.2d 439, 441 (2006). As to issue three, a manifest-weight standard is applied. See White v. Raines, 215 Ill. App. 3d 49, 60, 574 N.E.2d 272, 280 (1991).

Before addressing each of respondent's arguments on appeal, it is helpful to set forth some basic principles of probate law and practice. While Illinois has codified the laws of descent and distribution, as well as the procedures for the administration of decedents' estates in the Probate Act of 1975 (Probate Act) (755 ILCS 5/1-1 through 30-3 (West 2004)), the relationship between the court, the estate, and the parties was known at common law. We rely on those principles to understand both the relationship between the court and the parties as well as the inherent powers and duties of each.

The circuit court, sitting in probate, performs the duties of a probate court as the same was known prior to the adoption of the judicial article effective January 1, 1964. See Ill. Const. 1870, art. VI, §20, and Ill. Const. 1970, art. VI, §9. The court is ultimately in control of the estate, not the

personal representative. The personal representative in the collection and management of the estate is an agent of the court subject to the court's control and direction. The powers of the representative are derivative of the court's power in such a way that the representative acts as an agent of the probate court with legal duties to the court and fiduciary duties to the estate.

"The remedy furnished by the Probate Act for the recovery of property of the deceased or the discovery of information relating to the property is cumulative[] and was designed to be more expeditious and less expensive than the ordinary proceedings of detinue, trover or replevin. Although it is neither in law or equity, the citation proceeding bears the equitable aspects of a bill for discovery, in which it was necessary to sift the conscience of the party charged and to get at facts of which he or she alone could have knowledge. The intention of the legislature is to enable the court to compel the person cited, to discover, on oath, whether he or she has estate property in his or her possession." 1A M. McElroy, Horner

Probate Practice and Estates, §24.3, at 390-

91 (4th ed. rev. 2002).

Likewise, the citation procedure may be used repeatedly with regard to the same subject matter.  1A M. McElroy, Horner Probate Practice and Estates, §24.1, at 388 (4th ed. rev. 2002); Schwaan v. Schwaan, 320 Ill. App. 287, 289, 50 N.E.2d 861, 862 (1943).

### A. Statute of Limitations

Respondent argues that the amended citation filed by the representative on December 13, 2005, is beyond the five-year limitations period associated with "all civil actions not otherwise provided for" found in section 13-205 of the Code of Civil Procedure (735 ILCS 5/13-205 (West 2004)).  The decedent died on December 19, 1999, which date would normally mark the beginning of the five-year period, if applicable.

The representative argues that the "amended" citation is simply a revision of the citation filed by the representative against Christine on February 18, 2000.  That citation, however, proceeded to hearing before the trial court on March 27, 2000. At the conclusion of that hearing, the citation was discharged. Because of that discharge, no pleading remained to amend.  The representative's contention (that the timeliness of the "amended" citation is saved by a theory of relation back) must therefore fail as there was nothing extant to which it could relate back.

This does not, however, end our inquiry.  The nature of

- 7 -

a citation on behalf of an estate pursuant to section 16-1 of the Probate Act (755 ILCS 5/16-1 (West 2004)) is a vehicle by which the court can order returned to the estate property of the decedent that is wrongfully withheld from it. The trial court's jurisdiction sitting in probate extends to all property of the decedent, no matter where it may be found or when. As a consequence of that jurisdiction, the statute of limitations relied upon by respondent does not and cannot apply. To allow the statute of limitations to bar the recovery of an asset of the estate would serve to defeat the jurisdiction of the probate court and effectively restrict the statutory and common-law power of the court to supervise the administration and disposition of estates. For that reason, respondent's argument must fail.

B. Use of a Citation To Collect a Debt

Respondent argues that the use of a citation on behalf of an estate pursuant to section 16-1 of the Probate Act (755 ILCS 5/16-1 (West 2004)) is an inappropriate vehicle by which to recover a debt. This argument is based on Johnson v. Nelson, 341 Ill. 119, 122, 173 N.E. 77, 79 (1930), wherein our supreme court examined the jurisdiction of the probate court with regard to the administration of estates, as established by the predecessor statutes authorizing a citation proceeding (see Cahill's Stat. 1923, ch. 3, §81; Smith-Hurd Stat. 1923, ch. 3, §82). In

- 8 -

substance, those predecessor statutes are identical to section 16-1.

Keeping in mind that the probate court in 1930 was a court of limited, rather than general, jurisdiction (see Ill. Const. 1870, art. VI, §20), the supreme court held:

"The power to determine questions of title and rights of property and to enforce by execution orders adjudicating titles or requiring the delivery of property, added to sections 81 and 82 by the amendatory act, does not include jurisdiction of the ordinary action for the recovery of money the title to which is in the debtor. Where the relation of debtor and creditor arises for money lent, the debtor owns the money and is indebted to the creditor for it, and consequently the debtor has no money belonging to the creditor, or to the latter's estate, in his possession. To enforce collection of the indebtedness in such a case, by the rendition of a personal judgment against the debtor, was not within the scope of sections 81 and 82 prior to July 1, 1925, and no such power was conferred by the amendatory act, either

expressly or by implication.

In the present case, the money was delivered to the defendant in error by the transfer to his credit in the bank[,] and the title to the money vested in him. There is no contention by either party that the father continued to own the money after the transfer was made. Whether the transaction resulted in a loan, as the plaintiff in error argues, or constituted a gift, as the defendant in error insists, is for the present purpose immaterial, for in either situation, no question of title or of the recovery of specific property belonging to the estate is involved. Upon the view of the plaintiff in error that a loan was made, for which[,] with interest, the defendant in error is indebted to the estate, the relation of debtor and creditor merely was created and the summary proceeding provided by section 81 is not available. Obviously no opinion is expressed upon the merits of this case, but if the defendant in error is indebted to his father's estate, the remedy is an action at

law." <u>Johnson</u>, 341 Ill. at 125-26, 173 N.E. at 80.

Resolution of this issue in the first instance requires us to determine whether the claim for property made under the citation here constitutes an attempt for collection of a debt or the recovery of property.

Unlike the transfer of money to the decedent's son in <u>Johnson</u>, where the money once transferred (whether by gift or loan) became the property of the son, the issue presented by the instant citation arises from the conversion of a tractor. Whether the taking of the tractor by Christine and her use of it for a trade-in on a new tractor was with or without the decedent's consent, which was the ultimate issue presented for decision by the trial court, it does not resolve the question of whether the recovery of the converted asset constitutes the collection of a debt.

In common parlance, when someone is said to owe money or a thing to another, it is understood that the owing is a debt. However, the use of the term "debt" for purposes of our analysis is more fine. In <u>Cox v. Rice</u>, 375 Ill. 357, 362, 31 N.E.2d 786, 789 (1940), the court held that a circuit-court order, requiring a former conservator to repay money that was invested without court approval and suffer imprisonment for the failure to repay, did not constitute a debt for purposes of the constitutional bar

against imprisonment for debt. In other words, not all money owed constitutes a debt in this sense. Rather, debt in the sense as it is used in Johnson is an obligation to repay, which grows out of a consensual transaction between the creditor and the debtor. Cf. Kazubowski v. Kazubowski, 45 Ill. 2d 405, 408, 259 N.E.2d 282, 285 (1970), cert. denied, 400 U.S. 926, 27 L. Ed. 2d 186, 91 S. Ct. 188 (1970) (the defendant owed a "debt" that had been court-ordered, not consensual, and was jailed in contempt proceeding for a failure to pay).

It is noteworthy as well that the supreme court in Johnson used as examples of debt the loan or gift of money, either of which is a two-party transaction. While Christine argues that her use of her mother's tractor as a trade-in was a gift, the trial court found it was not. Rather, the trial court's decision was based on a characterization of the transaction as a conversion by Christine. The obligation to return the corpus of a conversion is not a debt within the limitation on the use of a citation described or contemplated by the supreme court in Johnson. If Christine had physical possession of the tractor and had not sold it, no issue of whether her obligation to return the tractor constituted a "debt" would arise. If, by her sole action, she converted the tractor into cash, the obligation due from her to return to or repay the estate does not change the character of the obligation owed by

her.  In such a case, a debtor-creditor relationship between Christine and her mother did not exist.  See In re Estate of Willich, 338 Ill. App. 289, 297, 87 N.E.2d 327, 331 (1949); see also In re Estate of La Rue, 53 Ill. App. 2d 467, 476, 203 N.E.2d 47, 51 (1964).

The personal representative also argues that an exception to the rule in Johnson exists when the debtor is a fiduciary.  It is clear that Christine held a power of attorney given by her mother some years prior to her death.  As the holder of the power, she had a fiduciary relationship with her mother.  See Apple v. Apple, 407 Ill. 464, 468-69, 95 N.E.2d 334, 337 (1950).  As this court has previously noted in In re Baker, 117 Ill. App. 2d 332, 337, 253 N.E.2d 550, 552 (1969), there is an exception to the general rule barring the use of a citation on behalf of the estate to collect when the respondent was a fiduciary to the decedent.  See also La Rue, 53 Ill. App. 2d at 476, 203 N.E.2d at 51; Willich, 338 Ill. App. at 299, 87 N.E.2d at 332.  While there is no evidence that Christine used the power of attorney given to her to accomplish the trade of the decedent's tractor, she still owed a fiduciary duty to the decedent.  Under either analysis, respondent's argument fails.

### C. Manifest Weight

Respondent argues that the trial court's decision is against the manifest weight of the evidence.  Particularly, she

argues that her production of a check for $20,000 written to the decedent marked "void" is evidence of her claim that she attempted to pay her mother for at least a part of the tractor. As a corollary, she argues the check is evidence of the credibility of her testimony that the trade was accomplished with the decedent's consent and that her mother did not want any proceeds from the transaction.

The trial court is in the best position to evaluate the credibility of the witnesses and to determine therefrom the facts of the case. White, 215 Ill. App. 3d at 60, 574 N.E.2d at 280. Its decision will not be overturned unless it is a against the manifest weight of the evidence. White, 215 Ill. App. 3d at 60, 574 N.E.2d at 280. Here, the trial court had the testimony of Christine, the alleged voided check, and some history of the dealings between Christine and her mother as evidenced by article III of the decedent's will. As a fiduciary to her mother, it was respondent's burden to prove that the tractor used as a trade constituted a gift. La Rue, 53 Ill. App. 2d at 476, 203 N.E.2d at 51; In re Estate of Casey, 155 Ill. App. 3d 116, 122, 507 N.E.2d 962, 966 (1987).

In contravention of respondent's assertion is the evidence that the decedent memorialized prior gifts to Christine by the preparation and filing of a gift tax return. We note that the sum of $55,296.28, given the gifts previously disclosed by

the 1998 gift tax return, should have triggered the requirement of a filing of a gift tax return for that amount as well. While the decedent died prior to the date by which such a return should have been filed, only one person had the necessary information to generate the return at its due date: Christine. Her inaction is as much evidence of whether the tractor transaction was a gift, especially given her fiduciary relationship to her mother and the estate, as anything else. We find there was sufficient evidence upon which the trial court could base its decision to find Christine failed to meet her burden of proof and to include the proceeds of the trade-in in the estate.

### D. Monetary Award

Respondent argues that since the decedent's tractor was used to generate a trade-in credit on the purchase of a new tractor, the estate should have been awarded a percentage ownership of the new tractor rather than the monetary-trade value in dollars. The difficulty with respondent's argument is that once chattel is sold, as this tractor was by reason of conveying it to the dealer of the new tractor, the res of the mother's estate has changed from chattel to the monetary credit that generated upon Christine's purchase of the new tractor. See In re Estate of Swartz, 218 Ill. App. 449 (1920) (dispute regarding estate's entitlement of chattel or the fair cash-market value of the chattel). It is no different than if Christine had simply

sold her mother's tractor for cash and kept it.

As respondent provides no legal authority in her brief for her contrary position, we will follow the above analysis to rule in favor of the estate as well.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH and MYERSCOUGH, JJ., concur.