300 S.W.3d 242 (2009)
In the ESTATE OF Laura B. DOWNS, Deceased.
James L. Rutter, Personal Representative, Respondent,
v.
Eldon K. Bugg, Appellant.
No. WD 70409.
Missouri Court of Appeals, Western District.
December 15, 2009.
*243 Eldon K. Bugg, Boonville, MO, pro se.
Jean E. Goldstein, Columbia, MO, for Respondent.
Before Division III: KAREN KING MITCHELL, Presiding Judge, and JAMES E. WELSH and MARK D. PFEIFFER, Judges.
MARK D. PFEIFFER, Judge.
Eldon K. Bugg (Bugg) appeals the trial court's judgment holding him in contempt *244 of court and ordering him confined to the Boone County Jail until he repays the Estate of Laura B. Downs (the Estate) the money he owes it. On appeal, Bugg presents two points. Because we find his first point dispositive, we address that point only.
In 1991, Bugg met Laura Downs (Downs) at his church. Although Bugg was not an attorney, he drafted a durable power of attorney for Downs. During the same year, Bugg borrowed $42,000 from Downs and executed a promissory note in which he agreed to make interest payments of $385 per month.
A few years later, Bugg drafted a revocable trust for Downs and named himself and Downs the co-trustees. Bugg designed the trust so that, upon Downs's death, the remainder of the trust would go to Bugg and Bugg's wife. In 2000, Bugg used his durable power of attorney status to assign all proceeds from the promissory note to the trust. In 2001, Bugg, under his purported co-trustee authority, prepared a receipt reflecting that he had repaid the $42,000 promissory note which, in fact, was not true.
In November 2000, the trial court determined that Downs suffered from dementia and was incapable of managing her financial resources and daily needs. The trial court appointed the Boone County Public Administrator as her guardian and conservator.
The Public Administrator filed a petition for a discovery of Downs's assets in which he alleged that the 1991 promissory note was Downs's asset. In his answer to the petition, Bugg asserted that the proceeds of the 1991 note had been assigned and paid to the trust. The trial court rejected Bugg's defense and found that the loan proceeds were never transferred to the trust and so the asset belonged to the conservatorship. On appeal, we affirmed the judgment by order and memorandum opinion. Rutter v. Bugg (In re Estate of Downs), 75 S.W.3d 853 (Mo.App. W.D. 2002).
Downs died in September 2001. The trial court appointed a personal representative to administer Downs's estate (the Estate). In July 2004, the Estate filed a petition for a discovery of assets in which it alleged that Bugg had improperly retained possession of the $42,000 promissory note. The parties filed cross-motions for summary judgment, and Bugg also sought leave to file a counterclaim to reform his self-drafted durable power of attorney. The trial court denied Bugg's motions and granted the Estate's motion for summary judgment. In its judgment, the trial court awarded the Estate $17,573.71, which was the balance due on the promissory note, and ordered Bugg to pay interest on the promissory note. The trial court also ordered Bugg to reimburse the Estate for its attorney's fees because of Bugg's failure to appear at a scheduled deposition. On appeal, we affirmed the trial court's judgment and ordered Bugg to reimburse the Estate for its attorney's fees for the appeal because we found that Bugg's appeal was frivolous. Rutter, 75 S.W.3d at 853.
In January 2007, the Estate filed an execution or garnishment application seeking to garnish Bugg's assets to pay the judgment. In March 2007, the sheriff filed a return in which he noted that he was not successful in collecting any money from Bugg to satisfy the garnishment.
On March 27, 2008, the Estate filed a motion for contempt and a motion for examination of Bugg's assets. On March 28, 2008, the court entered a show cause order to Bugg and ordered him to appear to explain why he should not be held in contempt for failing to comply with the terms *245 of the judgment. The trial court granted Bugg a continuance from the May 16, 2008, hearing date and scheduled a new hearing for June 12, 2008.
On June 12, 2008, the trial court held the hearing. The trial court determined that Bugg had the "financial ability" to satisfy the trial court's June 2006 judgment and concluded that Bugg was in contempt of court for failing to comply with the judgment. On June 20, 2008, the trial court issued a judgment for civil contempt and an order of commitment ordering the sheriff to confine Bugg in the county jail until he satisfied the 2006 judgment.
On July 2, 2008, Bugg filed a petition for writ of prohibition in which he sought to have the trial court's judgment set aside on the ground that it exceeded its jurisdiction in finding him in contempt of court. On July 7, 2008, this court issued a preliminary writ of prohibition. On November 25, 2008, this court quashed its preliminary writ on the basis that Bugg had an adequate remedy at law because he could have appealed the judgment. Bugg then filed a notice of appeal. This appeal follows.
In his first point on appeal, Eldon Bugg claims that the trial court erred in entering a judgment of contempt and an order confining him to jail until he complies with the court's judgment ordering him to pay the Estate the money he owed it, because his confinement violates the constitutional prohibition against imprisonment for debts. Specifically, Bugg claims that his confinement violates the constitutional prohibition against imprisonment for debts because the judgment against him required him to repay a promissory note to avoid continued imprisonment.
Pursuant to section 472.030, the probate division of the circuit court has the same powers to enforce its orders as the other divisions of the circuit court:
The probate division of the circuit court has the same legal and equitable powers to effectuate and to enforce its orders, judgments and decrees in probate matters as circuit judges have in other matters and its executions shall be governed by chapter 513, RSMo, and the applicable supreme court rule, except that all executions shall be returnable within thirty days unless otherwise ordered by the court. All process of the court may be served anywhere within the territorial limits of the state.
One of the trial court's powers is the power to hold a person in contempt. Fischer v. Kranitz (In re Estate of Johnson), 168 S.W.3d 84, 92 (Mo.App. W.D. 2005). In Missouri, there are two types of contemptcivil and criminaland each type can be either direct or indirect. State ex rel. Chassaing v. Mummert, 887 S.W.2d 573, 578 (Mo. banc 1994). Whether the trial court's contempt order is civil or criminal depends on the purpose of the order. Lomax v. Merritt, 153 S.W.3d 904, 908 (Mo.App. S.D.2005).
The purpose of a civil contempt order is to coerce a party's compliance with the trial court's judgment or order. Chassaing, 887 S.W.2d at 578. In that regard, a civil contempt order is intended to benefit the party who has received a judgment from the trial court. Id. The civil contempt sanction involves confining a contemnor indefinitely until he complies with the judgment. Johnson & Placke v. Norris, 874 So.2d 340, 346 (La.Ct.App. 2004). A civil contemnor has, at all times, the power to terminate punishment by complying with the court's order. Chassaing, 887 S.W.2d at 578.
The purpose of a criminal contempt order is not to aid a party in receiving the relief that the trial court has granted in its judgment. Id. Rather, the *246 purpose of a criminal contempt order is punitive in nature and acts to protect and vindicate the judicial system's authority and dignity and to deter future defiance. Id. Both civil and criminal contempt can be either direct or indirect. Id. The court enters a direct contempt order in response to a person's conduct that occurs in its presence. Id. On the other hand, the court enters an indirect contempt order in response to a person's conduct that occurs outside of the court's presence. Id.
In this case, by its express language, the trial court entered its contempt order because Bugg had failed to comply with the trial court's previous judgment in which it ordered Bugg to repay the Estate the balance of his promissory note:
[T]his Court has found that Eldon Bugg did fail to comply with this Court's lawful order of June 20, 2006 to pay the Estate `forthwith' $17,573.71 plus interest from April 1, 2000 (date of demand) and costs, including all deposition costs and to pay attorney's fees to the Estate in the amount of $459.80 for his failure to attend deposition on May 19, 2005[.]...
NOW THEREFORE, you are commanded to attach Eldon Bugg and commit him to the Boone County Jail until such time as he has purged himself of this contempt by transferring the sum of $17,573.71 plus interest from April 1, 2000 and in addition the costs ordered in the June 20, 2006 order, or until he be otherwise discharged according to law.
Thus, the trial court's contempt order is an indirect civil contempt order.
This court has the authority to review the trial court's order holding a person in civil contempt. Fischer, 168 S.W.3d at 91. We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law. Id. Whether or not the trial court violated a person's constitutional rights is a question of law, which we review de novo. State v. Nunnery, 129 S.W.3d 13, 17 (Mo.App. S.D. 2004) (stating the general rule that whether or not a defendant's constitutional rights were violated is a question of law).
Pursuant to section 511.340, the trial court can punish civil contempt by fine or imprisonment:

When a judgment requires the performance of any other act than the payment of money, a certified copy of the judgment may be served upon the party against whom it is given, and his obedience thereto required. If he neglect or refuse, he may be punished by the court as for a contempt, by fine or imprisonment, or both, and, if necessary, by sequestration of property.
(Emphasis added.) By its express language, section 511.340 allows a trial court to hold a person in civil contempt for failing to obey an order or judgment only if that judgment requires the performance of an action other than the payment of money. See also Dothage v. Dothage (In re Estate of Dothage), 727 S.W.2d 925, 927 (Mo.App. W.D.1987). Thus, pursuant to section 511.340, a court cannot hold a person in contempt for failing to comply with a judgment requiring him to pay money. Id. This is because the imprisonment for failing to obey a judgment to pay money would violate article I, section eleven of the Missouri Constitution, which states "[t]hat no person shall be imprisoned for debt, except for nonpayment of fines and penalties imposed by law." The trial court's statutory remedy to enforce its judgment ordering a person to pay its debt is execution. Dothage, 727 S.W.2d at 927.
Under the common meaning of debt, when someone owes money to another *247 person or entity, it is understood that the person owes a debt to that person or that entity. Thomas v. Montgomery (In re Estate of Lashmett), 369 Ill.App.3d 1013, 314 Ill.Dec. 155, 874 N.E.2d 65, 70 (2007). The use of the term "debt" for the purposes of the constitutional prohibition against the imprisonment for debt is more restrictive, and the courts do not consider a person a debtor merely because he owes money to someone. Id. Under this constitutional provision, "a debt is an obligation to pay money from the debtor's own resources," In re Marriage of Fithian, 74 Cal.App.3d 397, 141 Cal.Rptr. 506, 510 (1977), that "grows out of a consensual transaction between the creditor and the debtor." Thomas, 314 Ill.Dec. 155, 874 N.E.2d at 70.
Generally, any liability to pay money growing out of any express or implied contract constitutes a debt within the meaning of the constitutional guaranty, and imprisonment for such liability is prohibited[.] ... Thus, the prohibition applies to money directly due under a contract, to judgment debts arising from contractual debts, to attempts to specifically enforce agreements, and to damages for breach of any form of contractual obligation.
16A C.J.S. CONSTITUTIONAL LAW, § 711 (2005) (footnotes omitted). Thus, article I, section eleven of the Missouri Constitution prohibits a trial court from holding a person in contempt for failing to comply with a judgment ordering him to pay money from his own resources to satisfy an obligation that arose from a consensual transaction between him and his creditor.
The majority of courts, however, have held that the constitutional prohibition against the imprisonment for debts does not prohibit a trial court from holding a person in contempt because of his failure to deliver a specific fund of money that is erroneously in his possession:
There are some courts which hold, in view of constitutional provisions forbidding imprisonment for debt, that disobedience of an order for payment of money under a judgment or decree cannot be punished as a contempt; but, according to the decided weight of authority, an order directing the payment of specific funds adjudged to be in the possession or control of the person at the time of the trial may be enforced by contempt proceeding, and punishment may be inflicted for disobedience of the order.

Harrison v. Harrison, 239 Ark. 756, 394 S.W.2d 128, 130-31 (1965) (emphasis added); see also In re Ferrell, 172 A.2d 555, 556 (D.C.App.1961); In re Marriage of Fithian, 141 Cal.Rptr. at 510. This is because a trial court's order mandating that a person return a specific fund is not ordering a person to pay money out of his own resources. In re Marriage of Fithian, 141 Cal.Rptr. at 510. Rather, the trial court's order is merely mandating that the person return the other person's resources. Id.
In that regard, the courts have concluded that a trial court's order requiring a person to deliver a specific fund of money that is erroneously in his possession is no different than a court order requiring a person to deliver any other type of specific personal property:
It must be remembered, however, that this is not an action to recover judgment for money due to the estate, but to recover specific property belonging to the estate in the possession of appellants. The mere fact that the property happens to be money does not change the rule, which is the same whether the property is money, or a watch, or other personal property. Once the court is convinced that a person, over whose person *248 the court has obtained jurisdiction, is withholding from an administrator property belonging to the estate, the administrator is entitled to an order that property be turned over, and the order, if disobeyed, may be enforced by contempt proceedings. The judgment appealed from is not primarily for a debt, but directs the turning over of specific personal property.
Miller v. Beck (In re Ward's Estate), 159 Wash. 252, 292 P. 737, 740-41 (Wash.1930) (emphasis added).
Missouri has followed this rule and held that the trial court's order holding a person in contempt for failing to return a specific fund of money in his possession does not violate the constitutional prohibition against imprisonment for debts. See Zeitinger v. Mitchell, 244 S.W.2d 91, 98 (Mo. banc 1951) (holding that the trial court's order holding a person in contempt did not violate the Missouri Constitution when the undisputed evidence showed that the appellant was collecting decedent's debt on her behalf and had the specific fund in his possession); Fischer, 168 S.W.3d at 93 (trial court could hold the trustee of estate in contempt for failing to return his attorney's fees when record showed that trustee still had the specific fund in his possession); White v. Hutton, 240 S.W.2d 193, 202-03 (Mo.App.1951). Thus, when the court makes an express finding that the person still has the specific funds in his possession and issues an order directing the person to hand over those specific funds, the court can hold a person in contempt for failing to do so and the court's contempt order does not run afoul of the constitutional prohibition against imprisonment for debts. Zeitinger, 244 S.W.2d at 98; Fischer, 168 S.W.3d at 93; White, 240 S.W.2d at 202-03; Miller, 292 P. 737, 740-41; see also Harrison, 394 S.W.2d at 130-31; In re Ferrell, 172 A.2d at 556; 16A C.J.S., CONSTITUTIONAL LAW, § 712 (2005). Whether or not the person who owes money to someone owes that person a debt for the purposes of the constitutional prohibition against the imprisonment for debts depends on the origin and nature of the obligation and not on the manner of its enforcement. Ex parte Shaver, 597 S.W.2d 498, 500-01 (Tex.Civ.App.1980).
In this case, the origin of the Estate's claim against Bugg was a contractual agreement between the decedent and Bugg in which the decedent loaned Bugg $42,000 and Bugg executed a promissory note to repay the decedent the money. In that regard, the decedent was the creditor and Bugg was her debtor. Furthermore, it is undisputed that Bugg cannot return those specific funds because he no longer has that fund in his possession. Instead, the trial court's finding was merely that Bugg possessed the "financial ability" to satisfy the money judgment. Thus, the trial court's order held Bugg in contempt for failing to repay money from his own resources to satisfy an obligation that arose from a consensual transaction between a creditor and a debtor. This is the definition of a debt for the purposes of the constitutional provision against imprisonment for debts. The trial court's order imprisoning Bugg for failing to repay the promissory note violates Missouri's constitutional prohibition against imprisonment for debts. See Heidelberg College v. Depew, 44 Ohio Misc.2d 20, 541 N.E.2d 637, 638 (1988) (court would not enforce judgment for contractual debt with contempt because it would violate constitutional prohibition against imprisonment for debt); 16A C.J.S., CONSTITUTIONAL LAW, § 711 (2005). The trial court erred in holding Bugg in contempt of court and imprisoning him until he repaid the promissory note. We, therefore, reverse and vacate the trial *249 court's judgment of contempt and order confining Bugg to jail.
KAREN KING MITCHELL, Presiding Judge, and JAMES E. WELSH, Judge, concur.